Opinion
 

 WORK, J.
 

 Deane Kay Scharles, an indigent conservatee represented by independent pro bono counsel, appeals an order denying her petition for rehearing of the reestablishment of her conservatorship and request for an independent medical examination at San Diego County (County) expense. She contends the court erred in denying her request for court-ordered funding to permit her to retain an independent forensic psychiatric examina
 
 *773
 
 lion to which she would otherwise be entitled at the hearing if she were represented by the department of public defender or the department of alternate defense counsel. Because the denial of public funding for an independent examination hinders her ability to carry her burden of proof, she asserts the court should shift the burden to the County. As we shall explain, we conclude the trial court failed to follow proper procedure, applied an erroneous legal standard to obtain its determination, and thus abused its discretion in denying her motion for an independent forensic psychiatric examination at County expense on the sole ground that she had elected to proceed without being represented by the public defender or alternative public defender. However, because she abandoned her request to terminate her conservatorship and that decision was unaffected by the trial court’s ruling, we further conclude the error was not prejudicial and accordingly affirm the order.
 

 Factual and Procedural Background
 

 On May 2, 1989, Scharles’s conservatorship was reestablished for one year and the public conservator was reappointed. On January 30, 1990, represented by privately obtained pro bono counsel, Scharles petitioned for rehearing of tibe reestablishment of her conservatorship pursuant to Welfare and Institutions Code
 
 [1]
 
 section 5364 challenging the finding she was unable to provide for the basic personal needs of food, clothing or shelter. On February 22, the rehearing was continued to March 1 for Scharles’s presence and the scheduling of a forensic examination. The court further tentatively denied Scharles’s oral motion for the County to authorize funds for an independent examination, declaring it did not believe it was the responsibility for the County to fund “private counsel’s efforts” where an indigent client has obtained private counsel rather than seeking assistance of the public defender or in the case of a conflict, the office of the alternate defense counsel which have a budget to provide for additional forensics or investigations. At the public conservator’s request, on February 22 the court ordered Scharles to submit to an examination by a County forensic psychiatrist who had examined her a year earlier. The psychiatrist recommended she remain at the Metropolitan State Hospital.
 

 On March 1, the court denied both Scharles’s renewed motion for an independent psychiatric examination at County expense and her motion to
 
 *774
 
 shift the burden of proof to the conservator and County. She based her latter motion on her indigency and the court’s refusal to grant her access to County funds to hire an independent psychiatrist for an independent medical examination. She noted her Social Security Insurance funds were controlled by the conservator’s office and the department of social services, and the considerable constraints placed on her by the state mental hospital hampered her ability to communicate with counsel. The court explained its refusal to order Scharles’s independent medical examination at County expense as follows:
 

 “The reasoning for that refusal on my part is that when the County had set up its system for providing for indigent defense, and we have a rich and complex system for providing for indigent legal services, the County is entitled to maintain some sort of sensible control over that, impose some sort of administrative oversight over it. And the County does that by establishing first, the Office of the Public Defender, and as a backup in conflict cases, a Department of Alternate Defense Counsel, both of which offices have funds to do just what you wish and administer those funds. What you do outside of that structure essentially is hold yourself out as though you were a private public defender or ultimate defense counsel office. And from what you say, offer your services on a pro bono basis, but wish the County to fiind the additional aspects of that office that would be required, in your professional view, for you to carry on your practice.
 

 “I don’t think the law requires that. I think it’s entirely proper for the County to say that if we are going to fund indigent defense, we will set it up and organize it. We have done that and I will support that. And I will deny the request. That does not deny your client the availability of those funds. It simply requires that your clients go through the machinery set up to provide that. So the motion is denied.”
 

 Scharles then testified on her own behalf, explaining she had been living at the Metropolitan State Hospital for approximately two years where she has a part-time job on the ground crew picking up trash for about two hours a day at $3.35 per hour. She indicated she had not been in restraints for the past five months and summarized the medication she was currently taking. She explained she was at the hearing not to terminate the conservatorship, but to obtain placement in a board and care facility. She indicated she was currently living in unit 411, a “very secure” placement in comparison to her previous less secure and structured placement in unit 107. Feeling better about herself, she testified she would probably get a job to provide food and clothing for herself if not on the conservatorship although it had been a long time since she last worked. At the conclusion of this testimony, the court granted the County’s motion for a directed finding Scharles had not
 
 *775
 
 sustained her burden of proof establishing changed circumstances and denied the request for rehearing.
 
 [2]
 

 The Parties’ Contentions
 

 Scharles, concededly an indigent, contends she should not be deprived of her right to obtain an independent forensic psychiatric examination simply because she was fortunate to obtain private pro bono counsel, rather than accepting representation by the public defender’s office or the office of alternate defense counsel. Here, the trial court’s ruling ignored her indigency and reasonable need for independent medical examination and was based solely on the court’s perception that to order funding for private pro bono or appointed counsel would somehow violate a County policy.
 

 Scharles argues the trial court’s ruling not only discourages the statewide policy encouraging attorneys to do pro bono work, but effectively denied her statutory right to a rehearing. Moreover, she asserts that where the County controls her personal funds, it should be required to account for and provide them to her so she can adequately and meaningfully present her case. Finally, she contends that under the circumstances presented here, the burden of proof placed upon a conservatee on a motion for rehearing should shift back to the County.
 

 The County responds, asserting denial of County funds to obtain an independent forensic examination does not constitute a legitimate basis for shifting the burden of proof at a rehearing to the conservator and that substantial evidence supports the trial court’s determination Scharles failed to meet her burden of establishing a change in circumstances. Moreover, the County argues the trial court did not penalize Scharles for obtaining pro bono private counsel, but rather balanced her right to counsel and the necessarily included support services with the importance of addressing that right
 
 within the system which the County had established
 
 and funded to provide that right to indigent Lanterman-Petris-Short (LPS) conservatees.
 

 Preliminarily, we note the issue before us is not whether substantial evidence supports the trial court’s finding Scharles failed to carry her burden of showing a requisite change in circumstances reflecting she is no longer gravely disabled in that as a result of her mental disorder she is unable to
 
 *776
 
 provide for her basic personal needs for food, clothing or shelter.
 
 (Baber
 
 v.
 
 Superior Court
 
 (1980) 113 Cal.App.3d 955, 966 [170 Cal.Rptr. 353]; § 5008, subd. (h)(1).) Rather, the issue is whether the trial court abused its discretion in denying her motion for an independent psychiatric examination at County expense, thus depriving her of her statutory right to a meaningful rehearing by discriminately restricting her ability to gather and present evidence.
 

 Moreover, we note her conservatorship has been reestablished and a subsequent petition for rehearing has been denied since this contested proceeding, giving rise to the potential the issues presented here may evade review on the ground of mootness. However, because the issues presented here are of general interest and are likely to reappear in the future, they shall be resolved.
 
 (Conservatorship of Manton
 
 (1985) 39 Cal.3d 645, 647, fn. 1 [217 Cal.Rptr. 253, 703 P.2d 1147];
 
 Conservatorship of Walker
 
 (1987) 196 Cal.App.3d 1082, 1088, fn. 1 [242 Cal.Rptr. 289];
 
 Conservatorship of Forsythe
 
 (1987) 192 Cal.App.3d 1406, 1409 [238 CalJRptr. 77].)
 

 The Trial Court Abused Its Discretion in Denying Scharles’s Request for an Independent Psychiatric Examination at County Expense
 

 Where a trial court has discretion to decide an issue, it will generally be reversed on appeal only where it clearly appears a prejudicial abuse of discretion in fact occurred.
 
 (Mission Imports, Inc.
 
 v.
 
 Superior Court
 
 (1982) 31 Cal.3d 921, 932 [184 Cal.Rptr. 296, 647 P.2d 1075].) In other words, a reviewing court will only interfere with a trial court’s exercise of discretion where it finds that under all the evidence, viewed most favorably in support of the trial court’s action, no judge could have reasonably reached the challenged result.
 
 (Smith
 
 v.
 
 Smith
 
 (1969) 1 Cal.App.3d 952, 958 [82 Cal.Rptr. 282].) “[A]s long as there exists ‘a reasonable or even fairly debatable justification, under the law, for the action taken, such action will not be . . . set aside ....’”
 
 (Gonzales
 
 v.
 
 Nork
 
 (1978) 20 Cal.3d 500, 507 [143 Cal.Rptr. 240, 573 P.2d 458], quoting
 
 Harrison
 
 v.
 
 Sutter St. Ry. Co.
 
 (1897) 116 Cal. 156, 161 [47 P. 1019].) More specifically, a trial court’s exercise of discretion will not be disturbed unless the record establishes it exceeded the bounds of reason or contravened the uncontradicted evidence
 
 (Esgro Central, Inc.
 
 v.
 
 General Ins. Co.
 
 (1971) 20 Cal.App.3d 1054, 1064 [98 Cal.Rptr. 153]), failed to follow proper procedure in reaching its decision
 
 (People
 
 v.
 
 Green
 
 (1980) 27 Cal.3d 1, 24-26 [164 Cal.Rptr. 1, 609 P.2d 468]), or applied the wrong legal standard to the determination
 
 (Martin
 
 v.
 
 Cook
 
 (1977) 68 Cal.App.3d 799, 809-810 [137 Cal.Rptr. 434]).
 

 Here, the trial court abused its discretion as a matter of law in denying Scharles’s request because she was represented by pro bono private
 
 *777
 
 counsel instead of a public defender within the system the County had established to administratively oversee the delivery of indigent legal services. Implying that had she pursued court-appointed counsel through the County’s standard system she would have been able to obtain an independent medical examination at County expense, the court’s action penalized her for obtaining private pro bono counsel. Granted, neither the Probate Code nor Welfare and Institutions Code specifically authorizes the appointment of defense expert witnesses at County expense; however, Probate Code sections 1470-1472 do require the court to fix a reasonable sum for compensation and expenses of counsel when counsel has been in fact appointed. (Prob. Code, § 1472, subds. (a)(1), (b); 2 Cal. Conservatorships & Guardianships (Cont.Ed.Bar 1990) § 15.67, p. 853.) Once the County interprets “expenses” to include defense psychiatrists and funds that expense within its established system for the delivery of legal services to the indigent, the County must provide those funds indiscriminately based on established criteria pertaining to financial and evidentiary need. Further, the parties agree the court has the power to appoint experts where necessary at County expense under Evidence Code section 730 et seq. at the request of either the public conservator/ mental health counselor or the conservatee.
 
 [3]
 
 In fact, they both acknowledge the court can select a psychiatrist from either a private expert list held by the presiding criminal court of the San Diego Superior Court or the forensic evaluation unit, a subpart of the County’s forensic mental health division.
 
 [4]
 

 
 *778
 
 Further, the trial court’s decision here appears shortsighted, discouraging County and statewide policies encouraging attorneys to perform pro bono services. Contrary to the trial court’s characterization of Scharles’s counsel’s desire to have the County underwrite his practice so he could carry it on, he sought funds to simply present his conservatee’s case, funds necessary to permit adequate preparation so Scharles could meet her burden of proof.
 
 [5]
 
 Indeed, the pro bono resolutions of both the Board of Governors of the State Bar of California and the Board of Directors of the San Diego County Bar Association, acknowledge the needy and disadvantaged’s increasing need for pro bono legal services; recognize the responsibility of lawyers to ensure all members of the public have equal redress to the courts to resolve their disputes and access to lawyers when legal services are necessary; and urge all attorneys to devote a reasonable amount of time, but in no event less than 50 hours per year, to provide or enable the direct delivery of legal services to the indigent. In fact, both resolutions emphasize that although counsel providing pro bono legal services does so without expectation of compensation, reimbursement of expenses is anticipated. (See appendices A & B.) Moreover, the trial court’s ruling not only outrightly conflicted with statewide policy encouraging attorneys to perform pro bono services, but also avoided the opportunity to consider whether the County’s established system for providing legal services to indigent conservatees could be modified so that the County could administratively oversee and coordinate volunteer lawyers providing pro bono services in this area of the law. Such a rational approach to this problem would not only support the state policy in encouraging counsel to provide pro bono services, but it would also save the County the cost of attorney’s fees.
 

 Finally, the record amply shows the trial court abused its discretion in not basing its decision on whether Scharles was indigent and needed the funds for a warranted independent medical examination, but rather whether she was represented by a private pro bono or appointed counsel. There was no judicial inquiry to determine whether Scharles was in fact indigent and unable to pay attorney’s fees or to hire independent experts. Additionally, there was no judicial inquiry into whether an independent psychiatric examination was warranted.
 
 [6]
 
 Absent a critical inquiry into
 
 *779
 
 the financial and evidentiary need for an independent forensic psychiatric examination, the trial court not only failed to exercise its discretion, but also denied the conservatee her statutory right to a meaningful rehearing under section 5364.
 
 [7]
 

 Although we conclude the trial court abused its discretion when ruling upon Scharles’s request for an independent forensic psychiatric examination at County expense, she ultimately was not prejudiced because of her belatedly abandoning her request for termination. In fact, her counsel explained to tiie court he became aware of her change in heart at the March 1 hearing, when she declared she did not want to terminate her conservatorship, but wished to be placed in a board and care facility. Consequently, within the context of the order denying her petition for rehearing on the issue of grave disability challenged on appeal, she has suffered no prejudice.
 
 [8]
 

 
 *780
 
 Disposition
 

 The order is affirmed.
 

 Wiener, Acting P. J., and Benke, J., concurred.
 

 
 *781
 
 Appendix A
 

 [[Image here]]
 

 
 *782
 
 Appendix B
 

 [[Image here]]
 

 .........................................................................................................................................................................................................................................................
 

 [1]
 

 All statutory references are to the Welfare and Institutions Code unless otherwise specified.
 

 [2]
 

 Before entering its order, the trial court questioned Scharles’s counsel regarding Scharles’s apparent desire not to terminate her conservatorship, but obtain a board and care placement. Her counsel responded that he was not aware until the hearing she did not wish to terminate her conservatorship, although she advised him that morning she wished to be placed in a board and care facility and her conservatorship be removed from San Diego to Los Angeles so she could obtain a new social worker.
 

 [3]
 

 Additionally, Code of Civil Procedure section 2032 permits either party to obtain a mental examination provided a mental health issue is involved.
 

 [4]
 

 Although the parties appear to agree there does not exist a separate fund administered by the County specifically dedicated to defray the costs incurred by an indigent conservatee such as the cost of an independent medical examination, Scharles’s counsel, relying on an unsworn statement by Elliot G. Lande, conflicts administrator for the County, asserts the department of alternate defense counsel has a budget similar to the department of the public defender in that there exists a fund for retaining experts; this fund has been applied in mental health cases; the alternate defense counsel office has its own list of doctors who have agreed to accept a certain fee for work; unlike the public defender’s office, pro bono counsel may ask his office for money for an independent examination or the court itself may, upon application of counsel, order his office to make certain sums of money available to counsel for independent medical examinations; this has been done “all the time” pursuant to San Diego County Superior Court Rules, division five, local rule 1.10(c) providing that all reasonable necessary expenses shall be reimbursed by the County only upon approval by the conflicts administrator; and thus if the superior court is confronted by an attorney’s request for money for an independent examination, it has the power pursuant to the cited rule to make an appropriate order for fees.
 

 Consequently, whether by County design or by pragmatic decision of Lande as conflicts administrator, apparently a process does exist for pro bono counsel to secure funding for an independent medical examination either directly with the department of alternate defense counsel or by application to the court for an order directing that office to fund a specific request. Although the availability of this process perhaps highlights the error of the court’s way in not exercising its discretion in assessing whether S charles was indigent and needed the funds and whether an independent medical examination was warranted, we do not understand
 
 *778
 
 why Scharles’s pro bono counsel in her interests did not directly pursue funding from the department of alternate defense counsel, given his experience in the mental health court representing conservatees for over 20 years. Moreover, the apparent availability of the cited process of providing funding for pro bono requests eliminates the speculation of any differential treatment within the County system of conservatees represented by pro bono counsel and those represented by the public defender’s office, which has funds to retain an independent expert if the assigned public defender and the office believe it is in the conservatee’s best defense to do so.
 

 [5]
 

 This is not a case where counsel sought funds to defray his office overhead or for fees.
 

 [6]
 

 The County questions Scharles’s perceived need for expert testimony at the rehearing; however, we find the County’s inquiry to be patently shallow given the revealing consider
 
 *779
 
 ation the conservator found it necessary to have available expert testimony of a forensic psychiatrist at the hearing. Moreover, although a fact finder can cast aside expert testimony, the burden placed upon the conservatee at the rehearing would be significantly increased when confronted by the expert testimony of a forensic psychiatrist for the conservator, unable to proffer any conflicting medical opinion and required to rely on the kind of evidence effectively presented in
 
 Conservatorship of Everette M.
 
 (1990) 219 Cal.App.3d 1567 [269 Cal.Rptr. 182].
 

 [7]
 

 We note in passing that we find unpersuasive Scharles’s assertion she was without the assistance of counsel to file the petition for rehearing in the first instance. Granted, section 5364 provides conservatees the statutory right to petition for rehearing on their status as conservatees. Moreover, section 5365 provides them with the statutory right to appointment of counsel, but not until five days after the petition is filed. However, contrary to Scharles’s assertion, we do not conclude there exists a gap in the law for appointed counsel to aid a conservatee in filing a petition for rehearing. Rather, an indigent conservatee’s only hope for counsel is not to enlist the aid of pro bono counsel, but simply to contact and advise previously appointed counsel to file such a petition. Indeed, previously appointed counsel is the attorney of record and as such responsible for protecting the conservatee’s rights; named in the order appointing conservator; and the recipient of all future notices of appearance. (Prob. Code, § 1826.)
 

 [8]
 

 In light of our holding, we do not address Scharles’s contention, unsupported by legal precedent or in-depth legal analysis, the denial of her request for an independent examination shifts the burden of proof back to the County on her motion for rehearing. Had the trial court properly exercised its discretion in ruling upon her request, no cause would exist for the relief Scharles requests regardless of its ruling. The LPS Act, as well as constitutional considerations, require the petitioner for establishment or reestablishment of a conservatorship bear the burden of proving beyond a reasonable doubt the prospective conservatee is gravely disabled.
 
 (Conservatorship of Roulet
 
 (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1].) However, at the optional rehearing, the conservatee carries the burden of producing evidence and proving by a preponderance of that evidence she is no longer gravely disabled.
 
 (Conservatorship of Everette M., supra,
 
 219 Cal.App.3d at p. 1572;
 
 Baber
 
 v.
 
 Superior Court, supra,
 
 113 CaI.App.3d at pp. 965-966.) Scharles fails to show how the statutory process regarding the burden of proof is deficient.
 

 Moreover, Scharles’s contention the County should be required to account for funds belonging to a conservatee and to turn over said funds for her use in presenting her petition for rehearing is not cognizable on this appeal. Although her counsel referred to the County’s control of the conservatee’s resources, including her monthly Social Security Insurance, while
 
 *780
 
 arguing below the burden should shift to the conservator, the record is devoid of any indication he inquired of the conservator whether she had any personal funds available to pay for an independent forensic examination or requested an accounting by the conservator. Scharles’s failure to raise this issue below so as to provide us an adequate appellate record, precludes her from now asserting this issue for the first time on appeal.
 
 (Estate of Westerman
 
 (1968) 68 Cal.2d 267, 279 [66 Cal.Rptr. 29, 437 P.2d 517];
 
 Oldenkott
 
 v.
 
 American Electric, Inc.
 
 (1971) 14 Cal.App.3d 198, 207 [92 Cal.Rptr. 127].)