[No. D045669. Fourth Dist., Div. One. Mar. 13, 2006.]

In re the Conservatorship of the Person of BEN C.
SAN DIEGO COUNTY HEALTH & HUMAN SERVICES AGENCY,
Petitioner and Respondent, v.
BEN C., Objector and Appellant.
[And six other cases.*]

---

*Conservatorship of Edward G. (No. D045670); Conservatorship of Mary H. (No. D045671); Conservatorship of Rafael S. (No. D045672); Conservatorship of Stephen T. (No. D045673); Conservatorship of Eileen W. (No. D045674); Conservatorship of Fawn H. (No. D045712).

COUNSEL

Linda M. Fabian, under appointment by the Court of Appeal, for Objector and Appellant.

John J. Sansone, County Counsel, and Leonard W. Pollard II, Deputy County Counsel, for Petitioner and Respondent.

OPINION

HUFFMAN, J.—In this case pro bono counsel for a number of conservatees incurred expert witness costs without prior approval as required by local rules of court. This case presents the question whether reimbursement of such costs, in nonemergency circumstances, may be conditioned on preapproval by a trial court under its local rules. We hold the trial court may establish reasonable preapproval procedures and that the court has discretion to deny reimbursement when counsel has failed to comply with such procedures.

Ben C., Edward G., Mary H., Rafael S., Stephen T., Eileen W., and Fawn H. (Conservatees) appeal an order denying their petitions for reimbursement of expert costs concerning conservatorship proceedings under the Lanterman-Petris-Short (LPS) Act pursuant to Welfare and Institutions Code section 5000 et seq.[1] The Conservatees contend: (1) their appeals of the court's order denying their petitions for reimbursement of expert costs was timely; and (2) the trial court abused its discretion by denying their petitions for reimbursement because they had established indigency and evidentiary need thereby providing authority for the court to order reimbursement. We affirm the order.

FACTUAL BACKGROUND

The Conservatees here were each subject to conservatorship under the LPS Act.[2] Each conservatee was represented by pro bono counsel, Attorney Roy Short of the Short Legal Foundation. During the proceedings, Short retained Dr. Richard G. Rappaport to provide expert services on the Conservatees'

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] The LPS Act provides for the establishment of a conservatorship for up to one year for a person "who is gravely disabled as a result of mental disorder" and is unable or unwilling to accept voluntary treatment. (§ 5350; *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1009 [36 Cal.Rptr.2d 40, 884 P.2d 988].) Section 5008, subdivision (h)(1)(A) defines "gravely disabled" as a condition in which a person suffers from a mental disorder and is unable to provide for his or her own basic personal needs for food, clothing, or shelter.

behalf. Following Dr. Rappaport's psychiatric examination of each conservatee, the Conservatees petitioned the court for reimbursement of Dr. Rappaport's fees. Specifically, Ben, Edward, Rafael and Stephen assert they incurred expert fees in connection with petitions for rehearing concerning the determination of whether the conservatee was gravely disabled. Mary and Fawn contend they incurred expert fees with respect to defending an ex parte order establishing temporary conservatorship. The remaining conservatee, Eileen, argues she incurred expert fees associated with her petition to reestablish conservatorship. The specific amounts for the reimbursement of expert costs associated with Dr. Rappaport's examinations and subsequent testimony are set forth below.

*Conservatee Ben C.*

Following a jury trial, a conservatorship for the person of Ben C. was established in July 2003. Ben filed a petition for rehearing of that determination. In April 2004 Dr. Rappaport performed a psychiatric evaluation on Ben and presented expert testimony on Ben's behalf at a May 2004 rehearing. Ben did not make a request that the court authorize funding for an independent examination either before or at the rehearing. In July 2004 Ben petitioned the court for reimbursement of costs incurred. A copy of Dr. Rappaport's fee statement showed a charge of $350 for the psychiatric examination he conducted and $300 for his testimony in court.

*Conservatee Edward G.*

The court placed Edward G. under a conservatorship of the person in June 2003. Edward petitioned for rehearing after being placed under an LPS conservatorship in June 2003. In April 2003 Dr. Rappaport performed a psychiatric evaluation of Edward and presented expert testimony on Edward's behalf at a May 2004 hearing. In July 2004 Edward petitioned the court for reimbursement of expert costs in the amount of $350 for the psychiatric examination and $300 for expert testimony, both provided for by Dr. Rappaport. Edward asserted he was indigent and received limited funds from disability benefits to pay for room and board. No other assets were listed in the petition.

*Conservatee Mary H.*

In April 2004, Dr. Rappaport performed a psychiatric evaluation of Mary H. In July 2004 Mary petitioned for reimbursement in the amount of

$350 for her psychiatric evaluation. Dr. Rappaport did not testify at the jury trial to reestablish Mary's conservatorship. In a conservatorship investigation report, Mary stated she received limited benefits from Social Security and had no other personal assets. She asserted her lack of assets showed she was indigent and required the reimbursement of Dr. Rappaport's fees.

*Conservatee Rafael S.*

Rafael S. petitioned for rehearing after his conservatorship was reestablished in October 2003. In May 2004 Dr. Rappaport conducted a psychiatric evaluation of Rafael and testified on Rafael's behalf at the rehearing. In July 2004 Rafael petitioned for reimbursement of the costs associated with Dr. Rappaport's evaluation and testimony in court.

*Conservatee Stephen T.*

Stephen T. petitioned for rehearing after his conservatorship was reestablished in August 2003. Dr. Rappaport performed psychiatric evaluation of Stephen and testified on his behalf at the rehearing. Stephen then petitioned for reimbursement of the costs associated with Dr. Rappaport. In the petition Stephen requested reimbursement from the County of San Diego and Stephen's attorney stated in a declaration that Stephen had assets in a trust account.

*Conservatee Eileen W.*

In July 2004 Eileen W. petitioned for reimbursement for the costs of her psychiatric examination conducted by Dr. Rappaport. In her petition Eileen sought reimbursement from the County of San Diego, although her attorney stated Eileen had assets, including a car, a condominium and a bank account.

*Conservatee Fawn H.*

Dr. Rappaport examined Fawn H. in April 2004. About four months later, the parties stipulated that Fawn was no longer gravely disabled and the court ordered her conservatorship terminated. Fawn then submitted a petition requesting reimbursement of costs associated with her psychiatric evaluation conducted by Dr. Rappaport.

## DISCUSSION

### I

### *THE CONSERVATEES' NOTICE OF APPEAL WAS TIMELY*

The Conservatees contend their appeals challenging the trial court's September 22, 2004 order denying their petitions for reimbursement are timely. They assert the order was not pronounced in open court until December 15, 2004, and trial counsel had no actual notice that the trial court's formal written order had been filed in September. Therefore, the time period by when to file the notices of appeal did not begin to run until December 15, 2004.

### A

#### *Background Facts*

The court set the Conservatees' petitions for reimbursement of Dr. Rappaport's fees for hearing in August 2004. At the hearing the court took the matter under submission. A minute order generated by the court reflects the hearing was taken off calendar pending the court's decision.

On September 22, 2004, Judge Howard Shore filed a written decision denying the Conservatees' petitions. In the decision the court considered whether there was any authority to support reimbursement. The court noted the San Diego County Superior Court Local Rules (hereafter, Local Rules) did provide for reimbursement of costs where counsel is appointed in LPS Act proceedings. The court, however, stated it had found no authority for the reimbursement of forensic expert fees in LPS Act cases where counsel was not appointed and where no prior application to the court for forensic services had been made. The court also stated that this court's opinion in *Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334 [285 Cal.Rptr. 325] (*Scharles*) supported its conclusions. A copy of Judge Shore's order was placed in each of the Conservatees' court files.

In October 2004 counsel for the Conservatees filed a second set of petitions seeking to recover costs. At a December 2004 hearing, Judge Stephanie Sontag denied the second set of petitions, stating Judge Shore had previously issued a ruling denying the petitions in September 2004 and that the ruling was in the court file.

In January 2005 Ben, Edward, Mary, Rafael, Stephen and Eileen each filed notice of appeal from Judge Sontag's December 2004 order. About one week later Edward filed a second notice of appeal from an "[o]rder denying a request for costs made on August 24, 2004 . . . ." The same day, Mary and Fawn filed notices of appeal from the September 22, 2004 order denying costs.

## B

### *Failure to Provide Reasonable Notice*

As set forth in California Rules of Court,[3] rule 39(a), appeals in conservatorship proceedings are governed by the rules of court applicable to noncapital criminal cases, rules 30 through 33.3. Rule 30.1(a) requires that a written notice of appeal be filed "within 60 days after the rendition of the judgment or the making of the order being appealed." Thus, the question here is whether the Conservatees timely filed their notices of appeal within the allotted time after the "making of the order" being appealed.

The Conservatees cite to *In re Markaus V.* (1989) 211 Cal.App.3d 1331 [260 Cal.Rptr. 126] (*Markaus V.*) in support of the contention that their notice of appeal was timely. In *Markaus V.,* the court concluded that when an order is pronounced in open court, the time to appeal from the order beings to run when the order is pronounced. (*Id.* at pp. 1336–1337.) In support of this conclusion the court noted the Supreme Court generally begins to count the time to file a notice of appeal from the oral pronouncement of judgment in open court. (See *People v. Howerton* (1953) 40 Cal.2d 217, 218 [253 P.2d 8]; see also *People v. Behrmann* (1949) 34 Cal.2d 459, 460–461 [211 P.2d 575].)

In this case, Judge Shore took the Conservatees' petitions under submission in August 2004. Judge Shore later prepared a written decision denying the petitions for payment of expert fees. The written decision was file-stamped on September 22, 2004. The court, however, did not made an oral pronouncement of the order in open court and a thorough review of the record shows no indication of Judge Shore's order being served on or mailed to any of the Conservatees or their attorney. It was not until a later hearing conducted by Judge Sontag on December 15, 2004, when counsel for the Conservatees first learned of Judge Shore's written order. Admittedly, the order had been written and filed in the court files. However, we do not find the court's action of placing its order in the court file to be sufficient to have

---

[3] All further rule references are to the California Rules of Court.

provided reasonable notice to the Conservatees or their attorney of the court's rulings. It was not until the December 15, 2004, hearing that the parties and counsel received notice that the court had issued a ruling on the petitions. Because the order denying the petitions was not made in open court until December 15, 2004, the appeals here are timely. Following the reasoning in *Markaus V., supra,* 211 Cal.App.3d 1331, and rule 30.1, the time for filing the appeal did not being to run until the pronouncement of Judge Shore's order. The Conservatees filed their notices of appeal on January 3, 2005 and January 11, 2005, clearly within the 60-day time limit imposed by rule 30.1.

## II

### *THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE CONSERVATEES' PETITIONS*

The Conservatees assert the court abused its discretion by denying their first set of petitions seeking reimbursement of expert costs incurred with proceedings associated with the LPS Act. Specifically they contend the trial court had the authority under *Scharles, supra,* 233 Cal.App.3d 1334, the Probate Code and the Local Rules to authorize reimbursement of expert costs. They further assert their petitions showed their need for financial assistance because they were either indigent or unable to enter into contracts or access their assets.

As discussed above, because the Conservatees' appeal of the trial court's September 22, 2004 order is timely, we will consider the Conservatees' assertions surrounding the court's denial of their first set of petitions for reimbursement.

### A

#### *Standard of Review*

"Where a trial court has discretion to decide an issue, it will generally be reversed on appeal only where it clearly appears a prejudicial abuse of discretion in fact occurred." (*Scharles, supra,* 233 Cal.App.3d at p. 1340.) " ' "[A] trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order . . . . [Citations.]" ' " (*In re Marriage of Green* (1992) 6 Cal.App.4th 584, 589 [7 Cal.Rptr.2d 872].) Where, as here, a trial court has discretionary power to decide an issue, an appellate court cannot

substitute its judgment for that of the trial court. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118 [95 Cal.Rptr.2d 113].) "The burden is on the complaining party to establish abuse of discretion, and the showing on appeal is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion. [Citation.]" (*Ibid.*)

B

*Absence of Judicial Inquiry*

Here, the trial court did not abuse its discretion by denying the Conservatees' petitions for reimbursement. As stated in its September 22, 2004 order, counsel had made no prior application to the court for forensic services. Without a prior application, no judicial inquiry had been made into whether the Conservatees were, in fact, indigent and needed funds to conduct a warranted independent medical examination. Additionally, there was no judicial inquiry into whether there was an evidentiary need for such an examination. (See *Scharles, supra,* 233 Cal.App.3d at p. 1340.) Absent such an inquiry, the court stated it had no authority for the reimbursement of funds. We agree.

The Conservatees primarily rely on *Scharles, supra,* 233 Cal.App.3d 1334, in support of their contention that the County must provide funding to conservatees "indiscriminately" regardless of whether their counsel was court appointed or privately retained, provided financial need and evidentiary need are established. The Conservatees assert that funding would not be provided "indiscriminately" if pro bono counsel would have to obtain court authorization for expert fees before incurring costs because court-appointed counsel is not required to obtain the same authorization. The Conservatees' reliance upon *Scharles* is misplaced. The conservatee in *Scharles*, unlike the conservatees in this case, sought court-ordered funding to retain an independent psychiatric examination in preparation for a rehearing, well before the costs were ever incurred. Here, the Conservatees did not seek court-ordered funding. Instead, they sought reimbursement for expert costs without first requesting authorization from the court. Moreover, they did not file their petitions for reimbursement until months after they had incurred the expert costs.

■ Further, the trial court's Local Rules provide specific procedures to be followed by appointed counsel when obtaining authorization for expert costs. As the trial court noted in its order, the Local Rules apply in LPS Act

proceedings.[4] Local Rules, rules 8.1.11 through 8.1.19, sets forth the requirements for the reimbursement of costs to counsel in LPS Act proceedings. As stated in Local Rules, rules 8.1.11 through 8.1.13, where an attorney is appointed in an LPS proceeding, the determination of costs that are subject to reimbursement, as well as the amounts of costs subject to reimbursement, are to be determined by the policies and procedures of the Office of Alternate Defense Counsel. (See Local Rules, rules 8.1.11–8.1.13.) The Local Rules additionally provide that the determination of which costs are to be reimbursed shall be made by the trial court after a timely request has been made by trial counsel at the time of the subject hearing or shall be deemed waived. (Local Rules, rule 8.1.16.) Written notice must have been provided to the conservatee by his or her attorney of the possibility that attorney fees and costs may be ordered to be paid by the conservatee. Without notice, the fees and costs will not be ordered. (Local Rules, rule 8.1.18.)

Based on these rules and on the reasoning of the court in *Scharles, supra,* 233 Cal.App.3d 1334, the trial court did not abuse its discretion by denying the petitions. Had counsel been appointed in this case, counsel would not have been entitled to reimbursement for forensic expert fees in an LPS Act case where counsel had made no prior application to the court for authorization of the fees or a timely request seeking reimbursement. This same reasoning applies to cases in which counsel was privately retained. At no time did counsel seek a timely order for reimbursement in the seven LPS Act cases as required by Local Rules, rule 8.1.16. Further, the Local Rules provided that where a conservatee is not indigent, counsel must give notice to the conservatee that reimbursement of costs may be ordered by the court. The record shows conservatees Stephen and Eileen had personal assets. However, there is no indication that counsel provided the Conservatees with the required notice.

■ We continue to follow our holding in *Scharles, supra,* 233 Cal.App.3d 1334, that trial courts have a duty to provide funds for indigent persons in LPS conservatorship cases. However, trial courts can require that the parties must provide the court the opportunity to approve costs before they are incurred. Absent emergency or extraordinary circumstances, the trial court cannot be expected to reimburse funds without having the opportunity to establish criteria concerning the financial and evidentiary needs of a conservatee. No such circumstances are found in the record of this case. The trial court did not abuse its discretion by denying the Conservatees' petitions.

---

[4] The trial court stated Local Rules, rules 4.201 through 4.209 applied in LPS Act proceedings. These rules were renumbered on January 1, 2006, and are now set forth as rules 8.1.11 through 8.1.19.

## DISPOSITION

The order is affirmed.

Benke, Acting P. J., and Irion, J., concurred.

A petition for a rehearing was denied April 6, 2006, and appellant's petition for review by the Supreme Court was denied June 14, 2006, S142753.