Filed 1/12/16  Conservatorship of the Person of E.M. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person of E.M. | |
| M.M., | G051138 |
| Petitioner and Appellant, | (Super. Ct. No. 30-2011-00488602) |
| v. | O P I N I O N |
| KEVIN G. SMITH, as Public Guardian, etc., | |
| Objector and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Jamoa A. Moberly, Judge.  Affirmed.

M.M., in pro. per., for Petitioner and Appellant.

Nicholas S. Chrisos, County Counsel, and Robert N. Ervais, Deputy County Counsel, for Objector and Respondent.

\*        \*        \*

## I. Introduction

In September 2012, the Orange County Public Guardian (Respondent)[1] was appointed conservator of the person of E.M., a developmentally disabled adult, pursuant to Probate Code section 1801, subdivision (d).[2] E.M.'s mother, M.M. (Mother), appeals from an order made in November 2014, limiting her to monitored visits with E.M. We affirm the order. The trial court had the authority to permit monitored visits and Mother has not presented a record affirmatively proving error.

In a companion case (appeal No. G050405), Mother appeals from an order denying her petition to remove the conservator or, in the alternative, to terminate the conservatorship. That appeal is covered in a separate opinion.

## II. Facts and Procedural History

A. *The Conservatorship Petition*

E.M. is the daughter of Mother and her ex-husband, B.M. (Father). E.M. has been diagnosed with autism, attention deficit disorder, mental retardation, obsessive-compulsive disorder, psychosis, depressive disorder, and anxiety disorder. In April 2012, court-appointed counsel for E.M. filed a petition under Probate Code

---

[1] In September 2012, the public guardian was Lucille Lyon. Appearing as Respondent is Kevin G. Smith, who was appointed interim public guardian in March 2014.

[2] Probate Code section 1801, subdivision (d) states: "A limited conservator of the person or of the estate, or both, may be appointed for a developmentally disabled adult. A limited conservatorship may be utilized only as necessary to promote and protect the well-being of the individual, shall be designed to encourage the development of maximum self-reliance and independence of the individual, and shall be ordered only to the extent necessitated by the individual's proven mental and adaptive limitations. The conservatee of the limited conservator shall not be presumed to be incompetent and shall retain all legal and civil rights except those which by court order have been designated as legal disabilities and have been specifically granted to the limited conservator. The intent of the Legislature, as expressed in Section 4501 of the Welfare and Institutions Code, that developmentally disabled citizens of this state receive services resulting in more independent, productive, and normal lives is the underlying mandate of this division in its application to adults alleged to be developmentally disabled."

section 2351.5 (the Conservatorship Petition), seeking a limited conservatorship of the person and requesting that Respondent be appointed conservator. When the Conservatorship Petition was filed, E.M. was 19 years old and living in a regional center, level IV, adults-only, home with several other special needs adults.

The Conservatorship Petition alleged that E.M. is an adult, is "unable to properly provide for . . . her personal needs for physical health, food, clothing, or shelter," "has no understanding as to housing, medical treatment, finances or financial record keeping," and "is gravely impaired in a number of areas," including the ability to make purchases, enter into simple contracts, keep financial records, and make decisions on medical issues. "[D]ue [to] the grave disabilities of [E.M.], with onset during her early minority, [E.M.] will be unable to understand real world situations and will be unable to be transitioned into an independent living program, either now or at any[]time in the future." According to the Conservatorship Petition: "[T]he current placement of [E.M.] is the least restrictive environment for [her], considering the nature and extent of her profound disabilities. . . . [E.M.] appears to be doing well in her adjustment to this placement."

In 2011, Mother had filed a petition to have herself appointed conservator of E.M. Father likewise had filed a petition to have himself appointed conservator of E.M. The relationship between Mother and Father was "hostile" and "acrimonious."

The Conservatorship Petition alleged that Mother "is not capable of making decisions that are appropriate for [E.M.], often expressing unrealistic expectations for [E.M.], and making demands for performance that are unobtainable in the opinion of other professionals familiar with the case."

The trial court conducted an evidentiary hearing in September 2012, at which Mother and Father, among others, testified, and various investigative reports and reports from the regional center were received in evidence. At the conclusion of the hearing, the court appointed Respondent as limited conservator of the person of E.M. and

3

granted Respondent various powers under Probate Code section 2351.5. The court denied Mother's petition for appointment of conservator and dismissed Father's petition for appointment of conservator. Letters of conservatorship were issued on September 20, 2012.

B. *Mother's Petition to Remove the Conservator*

In June 2013, Mother filed a petition to remove the conservator, in which she made various allegations of wrongdoing against Respondent. She alleged that in June 2012, Respondent (who at that time was John S. Williams) had been accused by the Orange County Board of Supervisors of fraud and mismanagement. Mother alleged the conservatorship "imprisoned and isolated" E.M. in a "jail-like residential facility for life without parole," where she would be used as a "guinea pig to experiment with new drugs for the purpose of receiving kick backs from pharmaceutical companies." (Capitalization, boldface, & underscoring omitted.) Mother sought to have herself appointed conservator of E.M. in place of Respondent.

A hearing on Mother's petition to remove the conservator was conducted in June 2014. After hearing an opening statement from Mother and testimony from E.M.'s court-appointed attorney, the court found that a limited conservatorship continued to be necessary and that "insufficient evidence was presented." The court denied Mother's petition to remove the conservator and ordered that visitation continue to be monitored. The court set a review hearing for a later date on the status of visitation. Mother filed a notice of appeal from the order denying her petition to remove the conservator (appeal No. G050405).

C. *Order Regarding Visitation*

In November 2014, an evidentiary hearing was held regarding Mother's visitation rights. In a minute order of the date of the hearing (the Visitation Order), the court announced its decision and made findings. The court stated it had conducted an evidentiary hearing on two issues: "(1) termination of . . . [M]other's visitation with

4

[E.M.]; (2) If visitation is permitted, should it be monitored or unmonitored between [Mother] and [E.M.]."

The court provided this summary of the evidence: "The Court heard testimony from professionals currently involved in [E.M.]'s care. Dr. Marian Kalman, the psychologist who serves as the behavioral management consultant for [E.M.]'s group home, Ivanhoe House, testified as to the impact of visits between [Mother] and . . . E[.M.]. The visits have resulted in increased behaviors on the part of [E.M.] lasting several days at times following each visit. These behaviors have included physical aggression toward others as well as to herself. Dr. Kalman testified that in her opinion visits with [Mother] should not be terminated; providing that a neutral person could be identified to provide therapeutic supervision. In such a setting, if [M]other says anything negative or negative behaviors are exhibited by . . . [M]other, the visits would be terminated and [E.M.] brought back to her home at Ivanhoe. Elizabeth 'Liz' Reed, R.N., the case manager at Ivanhoe testified that [E.M.]'s behavior has never improved immediately after a visit with [Mother]. She testified that material goals to visits have caused disappointment in [E.M.] resulting in negative post-visit behavior. She also testified to the disruptive actions of [Mother] at Ivanhoe. At least eighty per cent of the time [E.M.]'s attitude is positive and she appears happy. Ms. Reed testified to the visits with [M]other as counterproductive to [E.M.]'s health and well[-]being. Suzette Smith of the Orange County Regional Center also testified briefly." The court received in evidence as exhibit No. 1 a report, prepared by Dr. Kalman, dated September 23, 2014.

Based on the evidence, the court concluded (1) "unsupervised visitation with [Mother] is not in the best interests of [E.M.] but that it is shown to be physically and emotionally harmful" and (2) "supervised visits between . . . [M]other and [E.M.] would be appropriate in a neutral setting with a third party therapeutic person supervising." Mother timely appealed from the Visitation Order.

5

### III. Discussion

Respondent initially argues that Mother's opening brief must be rejected outright because it includes no record citations or meaningful legal analysis. Mother's opening brief does not comply with California Rules of Court, rule 8.204(a)(1)(C), makes what appears to be extreme and unsupported arguments, and restates much of the allegations made in Mother's petition to remove the conservator. Although a self-represented litigant is held to the same rules as an attorney (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985), due to the nature of this matter, we exercise our discretion and consider the appeal on the merits.

Probate Code section 1801, subdivision (d) authorizes the appointment of "[a] limited conservator of the person or of the estate, or both," for "a developmentally disabled adult." Probate Code section 2351.5, subdivision (a)(1) provides that "[t]he limited conservator has the care, custody, and control of the limited conservatee," but does not have other powers unless expressly granted under section 2351.5, subdivision (b).

First, we address whether the trial court had the authority to make an order limiting Mother to supervised visits with E.M. The power of a limited conservator or the court to place restrictions on visitation with the conservatee is not specifically addressed in the Probate Code. A limited conservator may be granted the power to control the conservatee's "social and sexual contacts" if that power is requested in the petition to appoint the conservator and the trial court grants that power. (Prob. Code, § 2351.5, subd. (b)(6).) Here, the letters of appointment did not grant Respondent the right to control E.M.'s social contacts. Under Probate Code section 2351.5, subdivision (c), a limited conservator, the limited conservatee, or any friend or relative of the limited conservatee, may apply to the court to have the limited conservatorship modified by eliminating or adding any of the powers identified in section 2351.5, subdivision (b),

6

which would include the power to control the conservatee's social contacts. The granting or elimination of those powers is within the trial court's discretion. (*Id.*, § 2351.5, subd. (c).)

Because the trial court has the authority to grant a limited conservator the power to control the limited conservatee's social contacts, it follows that the trial court also has the authority to control the limited conservatee's social contacts by directly placing restrictions on visitation. The decision whether to exercise the authority to place restrictions on visitation with the conservatee would be discretionary with the court, as is the decision whether to eliminate or add powers of a limited conservator. (See Prob. Code, § 2351.5, subd. (c).) The trial court can place restrictions on visitation only after holding a properly noticed hearing. Probate Code section 2351.5, subdivision (c) requires that notice of a hearing on an application to eliminate or add powers of a limited conservator be given in the period and manner provided in Probate Code section 1460. Subdivision (a) of section 1460 requires notice of a hearing be given at least 15 days before the day of the hearing.

The trial court therefore had the authority to limit Mother's visitation with E.M. to monitored visits. Mother was given notice, sufficient under Probate Code section 1460, subdivision (a), of the hearing regarding visitation. She raised the issue of visitation in her petition to remove the conservator, and the trial court notified the parties, on June 19, 2014, of the review hearing on the status of visitation.

Having determined the trial court had the authority to place restrictions on visitation, we next address whether the court erred by exercising that authority in favor of requiring that Mother's visits with E.M. be monitored. The Visitation Order is on its face sufficient to support the trial court's determination. The trial court assessed the evidence and made findings in the order to support the conclusion that unsupervised visitation with Mother would not be in E.M.'s best interest. Under the abuse of discretion standard of review, those factual findings are reviewed for substantial evidence. (*County of San*

7

*Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)  However, we have no record of the proceedings regarding Mother's visitation rights except for the Visitation Order, which restricts Mother to monitored visitation with E.M.  That order is presumed correct, all intendments and presumptions are indulged in favor of its correctness, and Mother, as the appellant, bears the burden of providing a record affirmatively proving error.  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  "'The burden is on the complaining party to establish abuse of discretion.'"  (*Conservatorship of Ben C.* (2006) 137 Cal.App.4th 689, 697.)

Mother has not procured a reporter's transcript, or suitable substitute, of the hearing regarding her visitation rights and has not transmitted any trial exhibits to this court.  She therefore has not met her burden of proving error.  (See *Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.)

## IV.  Disposition

The Visitation Order is affirmed.  In the interest of justice, each party shall bear his or her own costs.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

8