Filed 8/21/25  Pritikin v. LG Electronics CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DAVID LEE PRITIKIN,<br><br>　Plaintiff and Appellant,<br><br>　　v.<br><br>LG ELECTRONICS U.S.A., INC.,<br><br>　Defendant and Respondent. | G063695<br><br>(Super. Ct. No. 30-2023-01330252)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Sheila Recio, Judge. Affirmed.

Kevin Michael Faulk for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Kevin E. Whelan, and Don Willenburg for Defendant and Respondent.

David Lee Pritikin appeals from an order of the superior court reducing the fees he requested pursuant to Code of Civil Procedure sections 1281.98 and 1281.99.[1] Pritikin argues the trial court did not adequately articulate the reasons for the reduction in the fees requested. As discussed below, we conclude the court adequately explained the reduction was due to the excessive fees requested. Moreover, the court's excessiveness finding was supported by substantial evidence in the record. Accordingly, we affirm.

STATEMENT OF THE CASE

On September 19, 2023, Pritikin filed a motion to compel LG Electronics U.S.A., Inc., (LG) to pay his arbitration fees and costs, and to award sanctions pursuant to sections 1281.98 and 1281.99. Pritikin argued he was entitled to fees and costs because LG failed to pay certain arbitration fees within 30 days of the due dates of December 14, 2022 and February 16, 2023. He sought: (1) $14,475 for "fees incurred in arbitration" "on the grounds that [LG], as the drafting party of a consumer sale contract containing an arbitration clause, materially breached the arbitration agreement by failing to pay the fees and costs required to continue the arbitration"; and (2) fees and costs of $3,178.50 for bringing the instant motion.

Attorney Kevin Michael Faulk submitted a declaration supporting the request for $3,178.50 in fees and costs associated with bringing the motion. Faulk stated Pritikin incurred $1,693.50 in fees and costs for preparing and filing the motion, which represents 3.3 hours at Faulk's firm's 2023 hourly rate of $495. Faulk also anticipated additional fees

---

[1] All further statutory references are to the Code of Civil Procedure, unless stated otherwise.

of $1,485, consisting of three additional hours at the same rate to prepare a reply, prepare for oral argument and telephonically attend the hearing on the motion.

Attorney Martin Anderson submitted a declaration in support of the request for $14,475 in fees. He stated his hourly rate was $750, which was within the range of $500 to $1,000 hourly rates charged by other lawyers in the field. He attached time records detailing his work in the case before Faulk took over the matter and filed the motion. The time records showed Anderson's work from the beginning of the court case, including sending a demand letter to LG, negotiating a settlement, filing an arbitration claim with American Arbitration Association (AAA), disqualifying the first arbitrator and withdrawing from arbitration once LG failed to pay the arbitrator's fees.

LG opposed the motion on two grounds. First, it argued the claims in the subject arbitration and lawsuit were barred by res judicata. Specifically, Pritikin was a member of a national class action lawsuit against LG, which was subsequently settled. "He filed a written claim, received a settlement payment, and cashed his settlement check . . . well before his demand for arbitration." Second, LG argued the requested fees were not reasonable and/or not a result of a material breach of the arbitration agreement. LG asserted the requested fees include "duplicate billing entries" and fees relating to his attorney's "pre-arbitration demand letter, settlement negotiations, etc." LG attached copies of the class action, complaint, the global settlement, and Pritikin's claim form and cashed settlement check.

In reply, Pritikin argued the applicable statutes specifically bar (1) consideration of the merits of the underlying action or arbitration; and

3

(2) waiver of his claims against LG. Pritikin did not dispute section 1281.99 limits the attorney fees and costs only to those which are the result of the material breach, but argued Anderson's fees are recoverable under section 1281.98, subdivision (c)(1). He further argued that Faulk's fees relating to the motion are recoverable under section 1281.99.

Following a hearing, the trial court partially granted Pritikin's motion. As an initial matter, it held that although LG asserted Pritikin's claims are barred by res judicata, it could not consider that assertion because section 1281.98, subdivision (c)(1) states that fees shall be awarded "without regard to any findings on the merits in the underlying action or arbitration." The court found the amount of fees requested to be excessive. "According to the documents before this court, not much was done in arbitration. The court further notes that Plaintiff seeks an award of fees that covers conduct before arbitration was commenced and/or conduct unrelated to arbitration. The court finds that $2,060,00 (5 hours at $400/hour plus filing fee of $60) is the reasonable amount of fees incurred as a result of defendant's material breach, which includes an award for having filed the instant motion." It ordered LG to pay Pritikin $2,060 within 30 days.

Pritikin appealed the sanctions order under the collateral order doctrine because it is (1) "a final determination (2) of a collateral matter (3) and direct[s] the payment of money or performance of an act." (A*pex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1016 (*Apex*).)

DISCUSSION

I.

APPLICABLE LAW

*A. Section 1281.98 Governs This Matter*

Pritikin challenges the trial court sanctions order, which awarded him attorney fees and costs in an amount less than requested. He contends this court should "make a *de novo* assessment as to whether the Superior Court employed the appropriate legal standard in determining the fee and cost award." Thus, as an initial matter, we must determine what is "the appropriate legal standard." Stated differently, we must determine whether section 1281.98 applies, or whether, as LG argues on appeal, section 1281.97 applies. Our resolution of this legal issue is required even though LG did not file a cross-appeal because the trial court cannot award attorney fees and costs as sanctions unless authorized by statute or by the agreement of the parties. (See *Olmstead v. Arthur J. Gallagher & Co.* (2004) 32 Cal.4th 804, 809 ["[T]rial courts may not award attorney fees as a sanction for misconduct unless they do so pursuant to statutory authority or an agreement of the parties"].)

In determining which statute applies, we employ a de novo standard of review. (See *Apex, supra,* 222 Cal.App.4th at pp. 1016–1017 ["The issue of a party's entitlement to attorney fees is a legal issue subject to de novo review"]; *Carmel Development Co., Inc. v. Anderson* (2020) 48 Cal.App.5th 492, 503 ["We review a trial court's interpretation and application of statutes de novo"].) "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "[W]e must look first to the words of the statute because

5

they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]" (*People v. Lopez* (2003) 31 Cal.4th 1051, 1056.) "If, however, the language supports more than one reasonable construction, we may consider 'a variety of extrinsic aids, including the ostensible objects to be achieved'" and the statute's legislative history. (*People v. Sinohui* (2002) 28 Cal.4th 205, 211.) For example, in this case, "[o]ne of the Legislature's main objectives [for enacting sections 1281.97 and 1281.98] was to deter employers from strategically withholding payment of arbitration fees so that they could no longer stymie the ability of employees to assert their legal rights." (*Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 357.)

"Sections 1281.97 and 1281.98 'largely parallel' each other. [Citation.] Whereas section 1281.97 concerns a failure to timely pay 'the fees or costs to *initiate*' an arbitration proceeding (§ 1281.97, subd. (a)(1), italics added), section 1281.98 concerns a failure to timely pay 'the fees or costs required to continue' an arbitration proceeding (§ 1281.98, subd. (a)(1), italics added)." (*De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 750.) Both sections 1281.97 and 1281.98 provide that as a result of the drafting party's failure to pay arbitration fees and costs, the consumer may unilaterally "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction." (§§ 1281.97, subd. (b)(1), 1281.98, subd. (b)(1).) In cases where the drafting party failed to pay the arbitration initiation fees and costs, "[i]f the employee or consumer proceeds with an action in a court of appropriate jurisdiction, the court shall impose sanctions on the drafting party in accordance with [s]ection 1281.99." (§1281.97, subd. (d).) However, in cases where the drafting party fails to pay fees to continue the arbitration,"[i]f the . . . consumer withdraws the claim from arbitration and proceeds in a court of

appropriate jurisdiction pursuant to paragraph (1) of subdivision (b), both of the following apply: [¶] (1) The employee or consumer may bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding. The recovery of arbitration fees, interest, and related attorney's fees shall be without regard to any findings on the merits in the underlying action or arbitration. [¶] (2) The court shall impose sanctions on the drafting party in accordance with [s]ection 1281.99." (§ 1281.98, subd. (c).) Section 1281.99, subdivision (a) provides: "The court shall impose a monetary sanction against a drafting party that materially breaches an arbitration agreement pursuant to subdivision (a) of [s]ection 1281.97 or subdivision (a) of [s]ection 1281.98, by ordering the drafting party to pay the reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach."

Here, after a de novo review of the record, we conclude section 1281.98 applies because the fees LG failed to pay are not arbitration initiation fees, despite an errant claim by Pritikin in his appellate opening brief. Section 1281.97 provides that the arbitration initiation fee must be set forth in an invoice provided by the arbitration provider. (See § 1281.97, subd. (a)(2) ["After an employee or consumer meets the filing requirements necessary to initiate an arbitration, the arbitration provider shall immediately provide an invoice for any fees and costs required before the arbitration can proceed . . ."].) Anderson's billing records reflect the arbitration provider here, AAA, sent an invoice to LG for a $500 administrative filing fee, which LG paid.

Additionally, the parties' arbitration agreement provides that arbitration must be initiated by a written demand for arbitration and in accordance with the AAA's consumer arbitration rules. Under rule 4 of those

7

rules, "[a]rbitration under an arbitration agreement naming the AAA shall be initiated by the initiating party (referred to as the "claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement."[2] The record shows these requirements were met. Thus, arbitration had been initiated, and the fees LG failed to pay later were those "fees and costs required for the arbitration proceeding to continue." (§ 1281.98, subd. (a)(2).) In sum, the applicable statute is section 1281.98.

As stated above, under section 1281.98, if the drafting party materially breaches the arbitration agreement, the trial court "shall impose sanctions on the drafting party in accordance with [s]ection 1281.99." (§ 1281.98, subd. (c)(2).) In addition, the "consumer may bring a motion, or a separate action, to recover all attorney's fees and all costs associated with the abandoned arbitration proceeding. The recovery of arbitration fees, interest, and related attorney's fees shall be without regard to any findings on the merits in the underlying action or arbitration." (§ 1281.98, subd. (c)(1).) Section 1281.99 provides that the monetary sanctions consist of "reasonable expenses, including attorney's fees and costs," but those fees and costs must be "incurred by the . . . consumer as a result of the material breach." (§ 1281.99, subd. (a).) Generally, these would be fees and costs incurred *after*

---

[2] On our own motion, we take judicial notice of the applicable version of the AAA rules, effective September 1, 2018, available on the AAA website: (<https://www.adr.org/rules-forms-and-fees/fetch?Category=Consumer, Consumer Arbitration Rules and Mediation Procedures, 05/01/25> [as of Aug. 5, 2025], archived at: <https://perma.cc/78UT>.) (Evid. Code, §§ 452, subd. (h), 459, subd. (a); see *Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1132, fn. 5 [AAA rules are subject to judicial notice].)

the material breach. Thus, to recover other fees, such as those incurred *before* the material breach, a consumer must bring a motion under section 1281.98, subdivision (c)(1).

Both sections 1281.98, subdivision (c)(1) and 1281.99, subdivision (a) address the scope of the trial court's discretion in determining whether and how much attorney fees and costs should be awarded. Under section 1281.99, subdivision (a), the court has no discretion in awarding reasonable fees and costs. It must award those reasonable expenses. However, because the statute does not set forth any mechanism on how to determine the amount of reasonable expenses, the court retains its discretion to determine that amount. (Cf. *Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 791 ["The principle of reasonableness means a trial court has discretion to reduce the amount of fees and costs requested as a discovery sanction in order to reach a reasonable award"].) In contrast, section 1281.98, subdivision (c)(1) has no mandatory language. Thus, the court has discretion to grant or deny the motion for attorney fees and costs. Additionally, if it decides to award fees and costs, it has discretion to determine the amount of fees and costs awarded.

*B. Standard of Review*

Because the trial court awarded sanctions, the only remaining issues concern the court's discretionary determinations. Accordingly, we review the amount of sanctions awarded, and whether to grant additional attorney fees and costs, and if so, in what amount, for an abuse of discretion. (See *Apex, supra*, 222 Cal.App.4th at p. 1017 ["The determination of the amount of fees awarded is reviewed for abuse of discretion"]; *Tedesco v. White* (2023) 96 Cal.App.5th 1090, 1097 [an order awarding monetary sanctions is reviewed for abuse of discretion].) "[A] trial court's exercise of discretion will

9

not be disturbed unless the record establishes it exceeded the bounds of reason or contravened the uncontradicted evidence [citation], failed to follow proper procedure in reaching its decision [citation], or applied the wrong legal standard to the determination [citation]." (*Conservatorship of Scharles* (1991) 233 Cal.App.3d 1334, 1340.)

Moreover, the trial court here reduced the requested amount of fees based on its finding that the requested fees were excessive. "A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether." (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635 (*Serrano*); accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1137 (*Ketchum*).) A court must have discretion to deny an unreasonable fee altogether because "'[i]f . . . the Court were required to award a reasonable fee when an outrageously unreasonable one has been asked for, claimants would be encouraged to make unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked in the first place. To discourage such greed, a severer reaction is needful. . . .'" (*Serrano, supra*, 32 Cal.3d at p. 635, quoting *Brown v. Stackler* (7th Cir. 1980) 612 F.2d 1057, 1059.)

Finally, "[t]he normal rules of appellate review apply to an order granting or denying attorney fees; i.e., the order is presumed correct, all intendments and presumptions are indulged to support the order, conflicts in the evidence are resolved in favor of the prevailing party, and the trial court's resolution of factual disputes is conclusive." (*Apex, supra*, 222 Cal.App.4th at p. 1017.)

10

## II.

### ANALYSIS

Pritikin contends the trial court did not adequately explain its reasons for cutting the requested fees. We disagree. The court does not have to explain the basis for a reduced fee award. "Where, as here, the trial court severely curtails the number of compensable hours in a fee award, we presume the court concluded the fee request was padded." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1325 (*Alnor*).) In any event, the court here adequately explained its decision when it stated its belief the fees requested were excessive.

Next, Pritikin argues the trial court's excessiveness finding was not supported by the record. He argues counsel's sworn declarations attesting to hourly rates and time records are presumed accurate in the absence of contrary evidence. But as a prior panel of this court has explained: "An attorney's chief asset in submitting a fee request is his or her credibility, and where vague, blockbilled time entries inflated with noncompensable hours destroy an attorney's credibility with the trial court, we have no power on appeal to restore it. (See *Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 524 ['The trial court is not bound by an attorney's evidence in support of his requested fee'].)" (*Alnor, supra*, 165 Cal.App.4th at pp. 1325–1326.) Thus, a lack of credibility destroys any presumption of accuracy. Here, the court explained its finding of excessive fees was based on requests for fees incurred "before arbitration was commenced and/or conduct unrelated to arbitration." Substantial evidence supports these findings. For example, Anderson submitted billing records for work performed before the arbitration was initiated, such as 1.4 hours for the initial meeting with the client, 2.8 hours for reviewing documents that Pritikin submitted regarding the claim, and 3.7

11

hours for settlement negotiations with LG. Given that the court could have denied all fees due to the inflated fee request, Pritikin has not shown awarding $2,060 in fees and costs constituted an abuse of discretion. (See *Ketchum, supra*, 24 Cal.4th at p. 1137 ["A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether"].)

## DISPOSITION

The trial court's order awarding $2,060 in fees and costs is affirmed. LG is entitled to its cost on appeal.


DELANEY, J.


WE CONCUR:


MOTOIKE, ACTING P. J.


GOODING, J.