[L.A. No. 31965. Aug. 22, 1985.]

Conservatorship of the Person of JAMES MANTON.
SAN DIEGO COUNTY DEPARTMENT OF MENTAL HEALTH,
Petitioner and Respondent, v.
JAMES MANTON, Objector and Appellant.

COUNSEL

Sharon Voorhees, under appointment by the Supreme Court, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Howard P. Brody, Chief Deputy County Counsel, and Susan J. Boyle, Deputy County Counsel, for Petitioner and Respondent.

OPINION

LUCAS, J.—Appellant James Manton appeals following a judgment granting the County of San Diego, Department of Mental Health's petition for conservatorship. The judgment, which included the power to commit Manton involuntarily to a state mental institution, followed a jury finding that Manton was gravely disabled. (Lanterman-Petris-Short Act; Welf. & Inst. Code, § 5000; all further statutory references are to this code unless otherwise indicated.)

While being cared for at San Diego County Mental Health Services, Manton was referred for conservatorship by the counselor of mental health.

(§ 5352.) Pursuant to that referral, Robert Deney, a mental health counselor, conducted an investigation and prepared a conservatorship report. (§§ 5008, subd. (g), 5354.) The report contained information from Manton's hospital and medical records, including statements of doctors and hospital attendants, interviews with Manton, and conversations with Manton's father including statements by him regarding statements by Manton's mother. Deney concluded that appellant was gravely disabled and recommended that a conservatorship be established over his person because he was unable to accept treatment voluntarily.

A petition for appointment of a conservator for appellant and the report by Deney were filed with the superior court on June 20, 1983. The court appointed a temporary conservator (§ 5353) pending a hearing on the petition for appointment of a conservator (§§ 5350, 5365). At the hearing, the court found that appellant was gravely disabled but vacated this finding when appellant requested a jury trial. (§ 5350, subd. (d).)

At the jury trial, which commenced August 4, 1983, appellant objected to Deney's testimony and to his conservatorship investigation report on the basis that they contained inadmissible hearsay. The court agreed with this characterization but after considering the opinion in *Conservatorship of Davis* (1981) 124 Cal.App.3d 313 [177 Cal.Rptr. 369], found both admissible pursuant to section 5354. The jury concluded that defendant was gravely disabled and a conservator was thereafter appointed.[1]

Appellant now challenges the introduction of Deney's report and testimony on both statutory and constitutional grounds. In addition, he raises several claims concerning the testimony of a psychiatrist and hospital attendant who testified regarding his condition. We conclude that there is no statutory authorization for the introduction of the report during trial and that the court erred in admitting it.

### DISCUSSION

Once a recommendation of conservatorship is made by an appropriate person (§ 5352), the "officer providing conservatorship investigation" for

[1]The conservatorship in effect was not stayed and therefore continued pending this appeal. (§ 5352.4.) Conservatorships automatically terminate one year after appointment of the conservator (§ 5361), although they may be reviewed and extended upon application by the conservator, subject to the right to request a trial (§ 5362). Because of the brevity of the basic period, the issue here might evade review on the ground of mootness. However, because the matter is one of general interest and likely to reappear in the future, resolution is appropriate. (See *Green* v. *Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225]; *Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 344 [116 Cal.Rptr. 97, 525 P.2d 1273].)

the relevant county begins an inquiry to determine suitable treatment for the proposed conservatee. Section 5354 describes the investigation process. All suitable alternatives to conservatorship must be considered and only if no alternative exists may conservatorship be recommended. The investigating officer "shall render to the court a written report of investigation prior to the hearing. The report to the court shall be comprehensive and shall contain all relevant aspects of the person's medical, psychological, financial, family, vocational and social condition, and information obtained from the person's family members, close friends, social worker or principal therapist." In addition, the report contains the recommendations of the investigator as to suitable alternatives and the propriety of conservatorship. The investigator must also designate a suitable conservator and provide recommendations regarding the scope of the conservator's power and the proper placement for the proposed conservatee. (§§ 5354.5-5356.)

Once it has been prepared, a copy of the report is sent to the person originally recommending conservatorship, to the proposed conservator, and to the recommended conservatee. Section 5354 concludes by providing that "The court may receive the report in evidence and may read and consider the contents thereof in rendering its judgment." ▮ At issue here is whether that language permits use of the report at the contested court or jury trial where at issue is whether the proposed conservatee is "gravely disabled." (See §§ 5008, subd. (h), 5350, subd. (d).)

When a petition has been filed, a "hearing" must be held within 30 days. Such a hearing may be waived if the proposed conservatee demands a trial before the hearing date. (§ 5350, subd. (d).) A demand for court or jury trial also may be made within 5 days following the hearing and such trial must commence within 10 days of the demand date unless the proposed conservatee's counsel requests an extension of up to 15 days.

Here, appellant made a timely request for jury trial. At the ensuing trial his objection to the introduction of the report by the conservatorship investigator resulted in a lively discussion, during which the court commented: "I seriously doubt the propriety of gross hearsay that nobody says he used for diagnostic purposes and I suspect that when it comes in, and its probably in that report, it will be error, and if the jury receives it, it will be prejudicial. [¶] But it isn't error under the present law that I am bound by, and so I'm bound to make the error." The "gross hearsay" to which the court referred included statements in the report describing comments by appellant's father referring to appellant's history, the father's attitude toward appellant, and the father's description of appellant's mother's feelings about appellant. The report was based on information "from hospital records, records of prior conservatorships" and conservations with appellant's fa-

ther. Clearly, but for some exception to the hearsay rule, the report would be inadmissible as containing hearsay and even hearsay on hearsay. (Evid. Code, § 1200.)

County contends that introduction of the conservatorship investigative report nonetheless was consistent with due process requirements, and points to other code sections permitting introduction of various reports prepared as part of an investigation. For example, Civil Code section 233 provides that when a petition for termination of parental custody and control is filed (see Civ. Code, § 232), the court shall order an investigation into the circumstances and the "juvenile probation officer or the county department shall render to the court a written report of the investigation with a recommendation to the court of the proper disposition to be made . . . ." The report is to be received into evidence by the court which "shall read and consider the contents thereof in rendering its judgment." (Civ. Code, § 233.)

County argues that the receipt into evidence of reports rendered pursuant to Civil Code section 233 (see also Code Civ. Proc., § 263; Welf. & Inst. Code, § 281) is analogous to and supports the treatment of the reports urged here. It also points specifically to *Conservatorship of Davis, supra,* 124 Cal.App.3d 313, 328, where the court concluded that investigative reports and the testimony of those preparing such reports "by specific language in section 5354, may be admitted and considered by the trier of fact. . . . [¶] . . . [O]nce such testimony was received in evidence, it . . . could and should have been considered by the jury as trier of fact in reaching its verdict as to 'grave disability.'" County asserts that *Davis,* and language in *Conservatorship of Early* (1983) 35 Cal.3d 244 [197 Cal.Rptr. 539, 673 P.2d 209], citing *Davis* with approval, indicate that authority for the introduction of such reports at contested trials lies in section 5354. However, contrary to county's contention, we did not specifically address this question in *Early,* nor did our citation in that case to the reasoning in *Davis* necessarily indicate approval of the Court of Appeal's treatment of the use of conservatorship investigation reports.

The *Davis* court stressed that "Sections 5001 et seq., necessarily require the trier of fact (the jury in the case at bench) to determine the question of grave disability, not in a vacuum, but in the context of suitable alternatives, upon a consideration of the willingness and capability of the proposed conservatee to voluntarily accept treatment and upon consideration of whether the nondangerous individual is capable of surviving safely in freedom by himself or with the help of willing and responsible family members, friends or other third parties. [Citation.]" (124 Cal.App.3d at p. 325.) Similarly, in *Early, supra,* we concluded that in deciding whether a person was gravely

disabled because he or she was "unable to provide for . . . personal needs for physical health, food, clothing or shelter . . ." (§ 5008, subd. (h)), courts should consider "the willingness and ability of third persons to assist the proposed ward or conservatee . . ." (35 Cal.3d at p. 252).

Neither the *Davis* nor the *Early* opinion relied on admissibility of the investigative report as a precondition to their still valid conclusions regarding the appropriate scope of inquiry in conservatorship trials. In particular, county's reliance on *Davis* as a definitive interpretation of the application of section 5354, is misplaced. The discussion of section 5354 occurred in a very different context: the proposed conservatee, who had relied upon the report's contents during the trial, had been found *not* gravely disabled. The county was contending on appeal that the jury's inquiry went too far when it reached beyond the question of the person's ability to succeed without assistance from any outside source. The *Davis* court's reference to section 5354 was made as part of its explanation that, as a matter of statutory construction, the phrase "whether [the person] is gravely disabled" must be broadly construed (124 Cal.App.3d at p. 323), and thus the information in the report was relevant.

Nor is county assisted by directing our attention to language in *Early* stating that a comprehensive investigative report "also may form the basis for a more extended conservatorship . . . ." (35 Cal.3d at pp. 247-248.) That comment is followed by an explanation that if a conservatorship is recommended, the proposed conservatee may demand a jury trial on the issue of grave disablement, and casts no light on the question presently before us. The issue of grave disability and suitable placement obviously can be determined based on *admissible* evidence; hearsay often may make things easier to "prove" but that does not mandate that its use be approved.

Looking at the statutory scheme and the language of section 5354 itself, we conclude that they do not purport to provide any exception to the general rules of evidence in regard to the use of conservatorship investigation reports at contested trials on the issue of grave disability. The hearing procedures are taken from those set forth in Probate Code section 1820 et seq. (§ 5350; Cal. Conservatorships (Cont.Ed.Bar 1983) § 8.38 at p. 530 (hereafter CEB).) In deciding whether a conservator should be appointed, the court must determine whether the proposed conservatee is gravely disabled as a result of a mental disorder or alcoholism. (§§ 5008, subd. (h), 5350.) At the hearing, the court may rely upon the "verified petition, the proofs of service, the court investigator's report, and the testimony of the proposed conservator" and of the proposed conservatee if available. (CEB, § 4.50 at p. 192.) Section 5365.1 also specifically permits waiver of the presence of the physician or other professional recommending conservatorship and the

introduction by stipulation of the recommendations and records of such persons "at any hearing . . . ."

If the proposed conservatee chooses to go forward with the hearing he may agree to be bound by the court's decision at such hearing by not contesting the petition or thereafter demanding a trial. (See, e.g., *Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 281 [139 Cal.Rptr. 357]; CEB, § 8.41 at p. 531.) But while section 5354 requires submission of the conservatorship report "prior to the *hearing*," (italics added) it makes absolutely no mention of the use of the report at any subsequent contested trial.[2] The fact that the conservatee may demand a *trial* in lieu of or after a *hearing* strongly indicates that the procedures at the two types of proceedings were expected to differ. If the report were admissible at both the initial hearing and a subsequent court trial, the two proceedings would be essentially identical in terms of the acceptable range of evidence to be considered. We believe that the better interpretation is one avoiding such redundancy in the absence of clear legislative intent to the contrary.

Yet another indication that the reports were intended for use only at the hearing is provided by section 5358, subdivision (c). That provision states that "At the time that the court considers the report of the officer providing conservatorship investigation . . ., the court shall consider available placement alternatives." At a *trial,* as opposed to a hearing, the issue is whether the proposed conservatee is gravely disabled; the question of placement is not decided until after a judgment is rendered on that issue. (§ 5350, subd.

---

[2]County has supplied an analysis of the 1978 amendments to section 5354 prepared by the staff of the Subcommittee on Mental Health and Developmental Disabilities. The amendments included deletion of the following language: "In contested cases, if the proposed conservatee or his counsel objects to the receipt of the report in evidence, such report shall not be read or considered by the court until the issue of grave disability has been adjudicated." The comment to this deletion observed that "The grave disability must be evidenced during the trial itself. This has led to frustration on the part of families, mental health professionals, and the courts and has led to the high percentage of recidivism of chronic mentally disordered persons. AB 3111 would permit the investigation report to be admitted into evidence." County urges that this comment demonstrates legislative intent to permit unqualified introduction of the report at any jury or court trial.

The comment prepared by the staff is ambiguous and does not address the issue raised here. There is no showing that specific hearsay problems raised by use of the report were considered. Nor does the comment indicate how introduction of the conservatorship report would alleviate the asserted frustration involved in requiring that "grave disability . . . be evidenced during the trial itself."

Because of our conclusion that the remaining effective language of the section does not establish that such reports are to be received in evidence over the conservatee's objection at the time of trial as opposed to during the initial hearing, and because the analysis by the subcommittee's staff is ambiguous and incomplete, we do not afford it great weight. (Cf. *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371] ["all pertinent factors" are considered in determining legislative intent].)

(d).)[3] The language of section 5358, subdivision (c), regarding use of the report for purposes of assessing placement alternatives thus further demonstrates that the report is to be considered solely during the hearing stage. Unlike Civil Code section 233 and similar statutes urged as analogous by county, section 5354 does not provide an express exception to the hearsay rule permitting use of the investigation report at a *contested trial.*

Because we conclude that the Legislature intended that the investigation report be admitted only at the hearing to the extent that it does not otherwise qualify for admission under any exception to the hearsay rule, we need not further consider the question whether the report's admission complies with the requirements of due process. Such an inquiry need only be undertaken if statutory authority is provided which permits unqualified introduction of the reports at trial.

As a result of our conclusion, reversal is mandated. The introduction of the report and testimony regarding it, which the jury considered as substantive evidence of appellant's condition, was potentially highly prejudicial. The report was replete with hearsay and conclusions adverse to appellant's claims that he did not need a conservator.[4]

In his appeal, appellant also raises several issues concerning various jury instructions and certain testimony. These are issues which will not necessarily recur and we therefore do not further address them.

## CONCLUSION

We therefore reverse the conservatorship judgment rendered in this proceeding[5] on the ground that the court erred in admitting the conserva-

---

[3]County points to section 5358.3 as demonstrating the Legislature's ability to distinguish between a "hearing" and a "trial" and argues that its failure to do so in section 5354 meant that section's provisions were applicable to both proceedings. In fact, the absence of any reference to a trial in section 5354, and the Legislature's demonstrated ability to make such distinctions, bolsters our conclusion that the admissibility of the report is limited to the initial hearing proceeding.

[4]For example, appellant's father is described as stating appellant "was an incorrigible child from an early age" who "has been arrested numerous times for offenses such as stealing food and trespassing." His father also is cited as saying appellant "had no place to live and no means of support that he knew of." In addition, throughout the report appear statements regarding appellant's behavior which are not attributed to a particular source. Since the jury was required to determine whether appellant had a mental disorder and, if so, was nonetheless able voluntarily to care for himself, these statements went to the heart of the decisionmaking.

[5]This determination does not mandate that any existing conservatorship be vacated. Appellant's present status as a conservatee, if applicable, would, of course, be pursuant to proceedings subsequent to those at issue here. (See *ante,* at p. 647, fn. 1.)

torship investigation report to the extent it contained inadmissible hearsay. Nothing in the present statutory scheme provides an exception to the general rules of hearsay for this report when its use is sought during a contested trial.

Bird, C. J., Mosk, J., Kaus, J., Broussard, J., Reynoso, J., and Grodin, J., concurred.