[No. B195408. Second Dist., Div. Six. Oct. 22, 2007.]

ROBERT LEVIN, as Public Health Officer, etc., Plaintiff and Respondent, v. ADALBERTO M., Defendant and Appellant.

## COUNSEL

Kenneth I. Clayman, Public Defender, and Michael C. McMahon for Defendant and Appellant.

Noel A. Klebaum, County Counsel, and John E. Polich, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**YEGAN, Acting P. J.**—Adalberto M. appeals from the trial court's orders enforcing and extending a civil order of detention for tuberculosis treatment issued against him by the Public Health Officer of Ventura County requiring that he be detained while he completes a course of treatment for tuberculosis. (Health & Saf. Code, §§ 121365, subd. (d), 121366.)[1] He contends the orders are "void" because the trial court deprived him of due process and equal protection by (1) failing to appoint counsel to represent him before an initial hearing, and (2) failing to require a unanimous jury verdict using the reasonable doubt burden of proof on the questions of whether he could be relied upon to complete the course of treatment and follow infection control precautions. (§ 121365, subd. (e)(1).)

Appellant has a statutory right to be represented by counsel at the hearing to enforce the civil order of detention for tuberculosis. (§ 121366.)[2] The trial

---

[1] All statutory references are to the Health and Safety Code unless otherwise stated.

[2] Appellant contends that he has a constitutional right to counsel. The courts do not reach constitutional issues where, as here, it is unnecessary to do so. (See, e.g., *People v. Leonard* (1983) 34 Cal.3d 183, 187 [193 Cal.Rptr. 171, 666 P.2d 28].)

court erred by conducting the initial hearing on August 29, 2006, without first appointing counsel or inquiring of appellant personally whether he wished to be represented by counsel. The remedy for that violation, however, is not a declaration that the initial order detaining appellant is "void." The remedy is to appoint counsel and to hold a new hearing on the question of whether appellant's detention and treatment should continue. The trial court has already cured its error by appointing counsel to represent appellant and conducting the November 20, 2006 hearing at which it reviewed the basis for appellant's detention and treatment. Here, the delay in appointing counsel was harmless. We further conclude that appellant had no due process, equal protection, or statutory right to a jury trial, unanimous verdict, or to a reasonable doubt burden of proof. Accordingly, we affirm.

*Facts*

In early August 2006, Adalberto M., a 37-year-old homeless man with a history of heroin and methamphetamine use, was admitted to the Ventura County Medical Center (VCMC) after testing positive for tuberculosis (TB). TB is a highly contagious and potentially fatal disease. The next day, the director of Ventura County's tuberculosis program, Dr. Kurt Cook, issued an order of isolation directing appellant to stay in a motel room the county provided for him while he completed taking a course of medication. Appellant agreed to, and signed, the isolation order. Public health staff took him to a motel and stocked the room with food, drinks, a refrigerator and a microwave oven. Appellant stayed there for about six days at the county's expense. Then, he checked out, forsaking his free room, board, and medicine. He did so to purchase illegal drugs.

About one week later, appellant was having trouble breathing and sought treatment at the Santa Paula Hospital. He was taken back to VCMC by ambulance where he refused to resume taking his tuberculosis medication. On August 23, 2006, Dr. Cook issued a civil order of detention pursuant to which appellant was prevented from leaving the hospital. Appellant demanded to be released and reacted violently when hospital security guards prevented his departure, breaking a window and assaulting the security guards. He actually spat on two security guards.[3]

On August 29, 2006, the trial court held an ex parte hearing on the public health officer's application to enforce the civil order of detention. The

---

[3] In addition to the disgusting and degrading aspect of spitting on another person, appellant's sputum carried a potential of infecting the guards with tuberculosis. Appellant's recalcitrance culminating in the spitting incident is the obvious reason why the public health officer could not again trust appellant in a motel setting. Appellant was the architect of his own confinement. (See, *post*, at p. 294.)

application was accompanied by a declaration from Dr. Robert Levin, the public health officer for Ventura County. Dr. Levin declared that appellant was provided with a copy of Dr. Cook's August 23, 2006 civil order of detention. According to Dr. Levin, appellant "did not request legal counsel or otherwise object to detention." At the August 29 hearing, appellant was not represented by counsel and did not appear. He was still confined in the hospital for treatment. The trial court granted the application, extending appellant's detention for 90 days. Immediately after it had ordered appellant detained for 90 days, the trial court appointed the public defender's office to represent him and set a review hearing for November 13, 2006. The public defender did not seek reconsideration or any relief whatsoever until the next scheduled hearing.

At the November 2006 review hearing, county counsel, appearing for the public health officer, contended that appellant's continued detention was authorized pursuant to section 121365, subdivision (e) because, although appellant was no longer contagious, his prior refusal of treatment and attempt to leave isolation demonstrated that he could not be relied upon to complete the treatment without observation. The particular strain of tuberculosis with which appellant is infected was resistant to one of the most common tuberculosis antibiotics. According to Dr. Levin, "this makes absolute adherence to the remainder of his treatment mandatory. If [appellant] is not fully compliant he will be at high risk for the development of multi-drug resistant TB which poses a dire threat to the community at large." Appellant and his counsel were both present at the November hearing. Appellant testified that, if released, he would comply with the treatment plan because he understood that he would get sick again if he stopped taking the pills. Based upon his recent recalcitrance, the trial court found clear and convincing evidence that appellant could not be relied upon to complete the course of medication if released. It renewed the detention order for another 90 days, to February 27, 2007. Appellant filed this appeal.

*Statutory Framework*

■ "Pulmonary tuberculosis is an infectious and communicable disease[ and is] dangerous to the public health . . . ." (§ 121360; see also *Souvannarath v. Hadden* (2002) 95 Cal.App.4th 1115, 1118 [116 Cal.Rptr.2d 7].) Section 121365 directs the local health officer in each jurisdiction to "use every available means to ascertain the existence of, and immediately investigate all reported or suspected cases of active tuberculosis disease in the jurisdiction, and to ascertain the sources of those infections." When the health officer determines that "the public health in general or the health of a particular person is endangered by exposure to a person who is known to have active tuberculosis disease," or a person reasonably suspected to have

the disease, the health officer "may issue any orders he or she deems necessary to protect the public health or the health of any other person, and may make application to a court for enforcement of the orders." (*Ibid.*)

These orders may include a mandate that a person submit to a TB test or examination (§ 121365, subd. (a)), complete an appropriate course of treatment and follow required infection control measures (§ 121365, subd. (b)), or submit to "directly observed therapy" for the disease (§ 121365, subd. (c)). A TB patient may be ordered confined to his or her residence (§ 121365, subd. (g)), excluded from his or her workplace, or excluded from any other place "when the local health officer determines that the place cannot be maintained in a manner adequate to protect others against the spread of tuberculosis disease" (§ 121365, subd. (f)).

Here, the public health officer detained appellant pursuant to section 121365, subdivision (d). This subdivision permits "An order for the removal to, detention in, or admission into, a health facility or other treatment facility of a person if both of the following occur: [¶] (1) The person has infectious tuberculosis disease . . . . [¶] (2) The local health officer finds, based on recognized infection control principles, that there is a substantial likelihood the person may transmit tuberculosis to others because of his or her inadequate separation from others."

Subdivision (e) of section 121365 permits the detention of a tuberculosis patient where the local health officer determines: "(2) There is a substantial likelihood, based on the person's past or present behavior, that he or she cannot be relied upon to participate in or complete an appropriate prescribed course of medication for tuberculosis disease and, if necessary, follow required infection control precautions for tuberculosis disease. The behavior may include, but is not limited to, refusal or failure to take medication for tuberculosis disease, refusal or failure to keep appointments or treatment for tuberculosis disease, refusal or failure to complete the treatment for tuberculosis disease, or disregard for infection control precautions for active tuberculosis disease." (*Ibid.*) The public health officer relied on this subdivision at the November 20, 2006 hearing to support appellant's continued detention.

Section 121366 allows the local health officer to detain a tuberculosis patient in a hospital or other appropriate facility, pursuant to subdivisions (a), (d) or (e) of section 121365, without a prior court order. When a detained tuberculosis patient requests release, however, the local health officer "shall make an application for a court order authorizing the continued detention within 72 hours after the request . . . ." (§ 121366.) The application must include a request for an expedited hearing. "After the request for release,

detention shall not continue for more than five business days in the absence of a court order authorizing detention. However, in no event shall any person be detained for more than 60 days without a court order authorizing the detention. The local health officer shall seek further court review of the detention within 90 days following the initial court order authorizing detention and thereafter within 90 days of each subsequent court review." (§ 121366.) The local health officer must prove the "particularized circumstances" necessitating detention "by clear and convincing evidence. Any person who is subject to a detention order shall have the right to be represented by counsel and upon the request of the person, counsel shall be provided." (*Ibid.*)

■ Section 121367 mandates that the local health officer's orders be in writing and be personally served on the affected person. Among other things, the order must identify the legal authority under which it is made, the individualized circumstances necessitating the order, less restrictive treatment options that were either considered and rejected or attempted and unsuccessful, the period of time during which the order remains in effect and other conditions necessary to protect the public health. (§ 121367, subd. (a)(1)–(4).) The order must inform the affected person of his or her right to request release and provide the name and telephone number of the person to whom that request may be made. (§ 121367, subd. (b)(2).) It must inform the person that a court will review the order within 60 days, even if they do not request release. (§ 121367, subd. (b)(3).) The person must be informed of his or her right to be represented by counsel and that counsel will be appointed on request. (§ 121367, subd. (b)(4).) Finally, the order must be accompanied by a separate written notice of the right to request release and the procedure for doing so, the right to counsel, and the right to supply the addresses and telephone numbers of not more than two people to receive notice of the person's detention. (§ 121367, subd. (b)(5).)

■ The confinement of a person, such as appellant, who is detained pursuant to section 121365, subdivision (d) may not be continued after he or she "ceases to be infectious or after the local health officer ascertains that changed circumstances exist that permit him or her to be adequately separated from others so as to prevent transmission of tuberculosis disease after his or her release from detention." (§ 121368, subd. (b).) A person detained pursuant to section 121365, subdivision (e), "shall not continue to be detained after he or she has completed an appropriate prescribed course of medication." (§ 121368, subd. (c).) The person is entitled to an interpreter if necessary. (§ 121369, subd. (a).)

*Mootness*

Appellant's counsel informs the court that appellant has completed his course of treatment and has been released from detention as mandated by section 121365, subdivision (d). Appellant contends, and respondent agrees, that although his appeal arguably has become moot, we should reach the issues he has raised. We concur. The issues presented are likely to recur and, because the course of treatment for tuberculosis typically lasts six to nine months, detention orders such as those issued in this case will likely expire before an appeal can be decided. (See, e.g., *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1011, fn. 5 [36 Cal.Rptr.2d 40, 884 P.2d 988]; *Conservatorship of Joel E.* (2005) 132 Cal.App.4th 429, 434 [33 Cal.Rptr.3d 704].) Accordingly, we exercise our inherent discretion to determine the merits of this appeal. (*Conservatorship of Manton* (1985) 39 Cal.3d 645, 647, fn. 1 [217 Cal.Rptr. 253, 703 P.2d 1147].)

*Appointment of Counsel*

Appellant contends the trial court violated his due process and equal protection rights by authorizing his detention without first appointing counsel to represent him. Section 121366 provides: "Any person who is subject to a detention order shall have the right to be represented by counsel and upon the request of the person, counsel shall be provided." The trial court erred when it failed either to appoint counsel for appellant or obtain his personal waiver of that right.[4] It cured the error, however, when it appointed the public defender to represent appellant and then reviewed the need for appellant's continued detention at the November hearing.

Appellant asserts that, because the trial court first detained appellant and then appointed counsel to represent him at the August 29, 2006 hearing, it never acquired personal jurisdiction over him and its subsequent orders are "void." He even sought habeas corpus relief. It is unclear from the record and oral argument just what remedy appellant was seeking. But in any event, physical release was certainly not appropriate. It is sufficient to now conclude that counsel should be appointed and given the opportunity to be heard before the trial court makes any order for detention for tuberculosis treatment. Delay in the appointment of counsel, as occurred here, does not necessarily irreparably prejudice the patient or taint subsequent proceedings.

A proceeding to detain and treat a tuberculosis patient is not identical, and in our view, not even similar to a criminal proceeding in which a formal

---

[4] Dr. Levin testified that appellant received a copy of the order for his detention and did not request counsel. We cannot equate a "failure" to request counsel with a waiver of the right to counsel.

plea or an interim finding or order acquires some finality and a presumption of correctness. An order of detention may be reissued as often as necessary to protect the public health, but no single order can last longer than 90 days without court review. In addition, the order of detention must, as a matter of law, be rescinded as soon as the patient completes the course of treatment or "ceases to be infectious or after the local health officer ascertains that changed circumstances exist that permit him or her to be adequately separated from others so as to prevent transmission of tuberculosis disease after his or her release from detention." (§ 121368, subd. (b), (c).)

Here, counsel was appointed to represent appellant long before the initial 90-day period expired. As indicated, counsel was appointed on the very first day of the 90-day period. Nothing prevented appellant's counsel from making an earlier request for his release based on his noninfectious status or other changed circumstances. Moreover, at the November hearing the trial court reviewed the factual basis for appellant's detention rather than relying on findings made before counsel was appointed. In these circumstances, we conclude appellant was not prejudiced by the delay in appointing counsel and the trial court's error was harmless.

### Unanimous Jury Trial and Proof Beyond a Reasonable Doubt

Appellant contends he has a due process right to a unanimous jury verdict on proof beyond a reasonable doubt of his inability or unwillingness "to participate in or complete an appropriate prescribed course of medication . . . and, if necessary, follow required infection control precautions . . . ." (§ 121365, subd. (e)(2).) He notes that unanimous jury verdicts are required in proceedings for the involuntary civil commitment of mentally ill or gravely disabled persons (Welf. & Inst. Code, § 5350, subd. (c)), and were also required for commitments under the former Mentally Disordered Sex Offender Act. (Welf. & Inst. Code, former § 6300 et seq.) Jury trials are also afforded to parolees identified as mentally disordered offenders (Pen. Code, §§ 2966, subd. (b), 2972, subd. (a)), and to prisoners identified as sexually violent predators (Welf. & Inst. Code, § 6603).[5]

---

[5] Appellant sees no difference between these exemplar statutory schemes and the confinement of recalcitrant tuberculosis patients. We do. Those persons described in the exemplar schemes who have been afforded more procedural protections are capable of harming society, but not in a medical way. Tuberculosis, by contrast, is a severe infectious disease. The Centers for Disease Control and Prevention (CDC) estimate that "virtually all new infections in the country today are contracted through the aerosol route from infected patients who are coughing and dispersing infective droplet nuclei into the air." (Cole & Cook, *Characterization of Infectious Aerosols in Health Care Facilities: An Aid to Effective Engineering Controls and Preventive Strategies* (1998) 26 Am. J. Infection Control 453.) This is hardly surprising, when one considers that "A cough can generate some 3000 droplet nuclei, as can talking for 5

The procedural protections offered by these statutes are, however, a matter of legislative preference rather than federal constitutional mandate. In fact, the United States Supreme Court has never held that due process requires either a jury trial or proof beyond a reasonable doubt in the analogous context of the civil commitment of a mentally ill or sexually dangerous person. *Kansas v. Hendricks* (1997) 521 U.S. 346 [138 L.Ed.2d 501, 117 S.Ct. 2072], noted that "States have in certain narrow circumstances provided for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety. [Citations.] We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards." (*Id.* at p. 357 [138 L.Ed.2d 501, 117 S.Ct. 2072].)

Those "proper procedures and evidentiary standards" do not, at least as a matter of federal constitutional law, include a requirement of trial by jury. "There is no clearly established Supreme Court law which holds that due process requires a jury trial in civil commitment proceedings . . . ." (*Poole v. Goodno* (8th Cir. 2003) 335 F.3d 705, 710–711.) To the contrary, the Ninth Circuit holds that "due process does not require a jury trial" in a civil commitment proceeding against a criminal defendant found incompetent to stand trial. (*U.S. v. Sahhar* (9th Cir. 1990) 917 F.2d 1197, 1207; see also *Carty v. Nelson* (9th Cir. 2005) 426 F.3d 1064, 1073, 1075–1076 [California's Sexually Violent Predator Act does not violate 6th or 14th Amends. to the U.S. Const.].)

Nor has the United States Supreme Court mandated proof beyond a reasonable doubt in civil commitment proceedings. In *Addington v. Texas* (1979) 441 U.S. 418 [60 L.Ed.2d 323, 99 S.Ct. 1804], a case involving the indefinite detention of mentally ill persons, the court held that "due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence" (*id.* at p. 427), but does not "require states to apply the strict, criminal standard" of proof beyond a reasonable doubt (*id.* at p. 431). Accordingly, the court settled on the "clear and convincing evidence" standard of proof, which it described as "a middle level of burden of proof that strikes a fair balance between the rights of the

---

minutes. A sneeze can generate as many as 40,000 droplets . . ." containing infectious tuberculosis bacilli. These droplets are, of course, dispersed into the air which we all breathe creating a fertile environment for new infections. (*Id.* at p. 455, fn. omitted.) This certainly differentiates appellant from those persons described in the exemplar schemes.

individual and the legitimate concerns of the state." (*Id.* at p. 431; see also *Jones v. United States* (1983) 463 U.S. 354 [77 L.Ed.2d 694, 103 S.Ct. 3043] [due process satisfied by use of preponderance of the evidence standard in federal commitment proceeding against insanity acquittee].)

As the Supreme Court noted in *Vitek v. Jones* (1980) 445 U.S. 480 [63 L.Ed.2d 552, 100 S.Ct. 1254], the fact that a person is involuntarily detained for medical treatment "does not justify dispensing with due process requirements." (*Id.* at p. 495.) *Vitek* held that, when a prisoner is being transferred to a state mental hospital for treatment, due process requires that the prisoner be given written notice, an opportunity to be heard before a neutral decision maker, the ability to review and challenge the evidence supporting the transfer, a written statement of reasons for the decision, legal counsel and timely notice of these rights. (*Id.* at pp. 494–495.) The Supreme Court reasoned these procedures were required because "The question whether an individual is mentally ill and cannot be treated in prison 'turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists.' *Addington* v. *Texas*, 441 U.S. at 429. . . . It is precisely '[t]he subtleties and nuances of psychiatric diagnoses' that justify the requirement of adversary hearings. *Id.*, at 430." (*Id.* at p. 495.)

The California Supreme Court reached a similar conclusion in *Conservatorship of Roulet* (1979) 23 Cal.3d 219 [152 Cal.Rptr. 425, 590 P.2d 1], a case arising under the Lanterman-Petris-Short Act (LPS Act) (Welf. & Inst. Code, § 5350 et seq.). The LPS Act provides that a gravely disabled person is entitled to a jury trial before a conservator is appointed or reappointed to care for the person. (Welf. & Inst. Code, § 5350, subd. (d).) In *Roulet*, our Supreme Court considered whether the jury's verdict had to be unanimous and whether the reasonable doubt standard applied. It held that the "due process clause of the California Constitution requires that proof beyond a reasonable doubt and a unanimous jury verdict be applied to conservatorship proceedings under the LPS Act." (*Conservatorship of Roulet, supra,* 23 Cal.3d at p. 235.) The court reasoned these protections were required because a conservatorship involved deprivations of liberty, including involuntary confinement in a mental hospital, that closely resembled imprisonment and "placed a lasting stigma on [the conservatee's] reputation." (*Id.* at p. 223.)

More recently, our Supreme Court "has recognized, however, that the analogy between criminal proceedings and proceedings under the LPS Act is imperfect at best and that not all of the safeguards required in the former are

appropriate to the latter." (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 538 [53 Cal.Rptr.3d 856, 150 P.3d 738].) Indeed, the LPS Act itself permits a mentally ill and imminently dangerous person to be involuntarily committed for "successive periods of increasingly longer duration" before the right to a jury trial attaches. (*Ben C.*, at p. 541.) An initial detention of 72 hours may be obtained without judicial review of any sort. (Welf. & Inst. Code, § 5150.) After that, commitments of 14 days and 30 days are available, each requiring "a certification hearing before an appointed hearing officer . . . . ([Welf. & Inst. Code,] §§ 5256, 5256.1, 5262, 5270.15, 5275, 5276.) A 180-day commitment requires a superior court order. ([Welf. & Inst. Code,] § 5301.)" (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1009 [36 Cal.Rptr.2d 40, 884 P.2d 988].) After these temporary commitments have lapsed, the LPS Act "authorizes the appointment of a conservator for up to one year for a person determined to be gravely disabled as a result of a mental disorder and unable or unwilling to accept voluntary treatment. ([Welf. & Inst. Code,] § 5350.) The proposed conservatee is entitled to demand a jury trial on the issue of his or her grave disability, and has a right to counsel at trial, appointed if necessary." (*Susan T.*, at p. 1009, fn. omitted.) All of these statutory provisions, including those which permit involuntary commitment for up to 180 days without a jury trial, pass state constitutional muster. (*Conservatorship of Ben C., supra,* 40 Cal.4th at pp. 542–543.)

Tuberculosis differs from mental illness in ways that justify fewer procedural safeguards, not more. Unlike tuberculosis, mental illness is not contagious. Tuberculosis can be definitively and objectively diagnosed, treated and pronounced cured. The disease is diagnosed by studying sputum cultures for the presence of tuberculosis organisms. It is treated with a six- or nine-month course of powerful antibiotics. Treatment may occur in a hospital or in a noninstitutional setting, such as a motel room or the patient's own home. The disease is considered cured when the course of antibiotics has been completed and the sputum cultures show no tuberculosis organisms for eight weeks. No such certainty is available in the diagnosis or treatment of mental illness and some involuntarily committed people are subjected to indefinite hospitalization in environments that may resemble prisons more closely than hospitals. (*Vitek v. Jones, supra,* 445 U.S. at pp. 494–495; *Addington v. Texas, supra,* 441 U.S. at p. 429.)

Nevertheless, the tuberculosis control statutes at issue here provide all of the process due under *Vitek* and *Conservatorship of Ben C.* Patients are entitled to written notice of the basis for their detention and their right to counsel, their right to request release, and the availability of judicial review of the detention order. (§ 121367.) The trial court must review an order for the detention of a tuberculosis patient at least every 90 days and the patient must be released as soon as the conditions necessitating detention have been

addressed. (§§ 121366, 121368, subd. (b).) Proof by clear and convincing evidence is required before a patient can be detained for treatment. (§ 121366.)

█ If due process does not require a jury trial or proof beyond a reasonable doubt for the temporary, 180-day civil commitment of a mentally ill person, it cannot require those procedures before a contagious and recalcitrant tuberculosis patient is detained for treatment of a similar duration. The procedures mandated by sections 121365 through 121369 satisfy federal and state due process requirements. (*Vitek v. Jones, supra*, 445 U.S. at pp. 494–495; *Addington v. Texas, supra*, 441 U.S. at p. 431; *Carty v. Nelson, supra*, 426 F.3d at pp. 1073–1074; *Conservatorship of Ben C., supra*, 40 Cal.4th at pp. 542–543.) The trial court did not err in denying appellant's requests for a jury trial and proof beyond a reasonable doubt.

### Conclusion

There is an irony in this case which cries out for comment. Appellant contests his confinement for treatment that not only improved his health, but saved his life. His recalcitrance was both foolish and selfish. By leaving isolation, appellant put the entire community at risk. Except for a delay in the appointment of counsel, which could have been remedied by a motion for reconsideration, appellant was treated with fairness, care and compassion at every stage of his encounters with public health authorities, the police, and the courts. He was provided with medical care, room and board, an attorney and a meaningful opportunity to be heard in court, all at public expense. The public health officer "bent over backwards" to help him and safeguard the community. It was an uncontroverted medical fact that appellant had tuberculosis and, in the expert opinion of his doctor, posed a medical threat to the community if not confined. No rational judge or jury, in good conscience, under any standard of proof, could release appellant into the community until he was no longer a danger. We can find no fault on the part of those people who were trying to help appellant and simultaneously protect the other citizens of Ventura County from the spread of tuberculosis.

We do not intend to chill the right to appeal. But abstract notions of the process due to an individual, such as a jury trial, unanimous verdict, or proof beyond a reasonable doubt, must be considered in light of the factual circumstances under which these rights are claimed. The factual scenario presented here makes a poor foundation to support an expansion of the process due to a tuberculosis patient. It must be emphasized that the rights appellant seeks to engraft on the extant statutory scheme have not previously been recognized by judicial precedent.

The judgment (order to continue civil detention pursuant to Health & Saf. Code, § 121365, subd. (e)) is affirmed.

Coffee, J., and Perren, J., concurred.

A petition for a rehearing was denied November 14, 2007, and appellant's petition for review by the Supreme Court was denied February 13, 2008, S158722.