Filed 6/11/15  Conservatorship of K.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| Conservatorship of the Person and Estate of K.M. | C076889 |
| TERI WEBB, as Public Guardian, etc., <br><br> Petitioner and Respondent, <br><br> v. <br><br> K.M., <br><br> Objector and Appellant. | (Super. Ct. No. SMH0000407) |

K.M. appeals from a June 25, 2014 trial court order which reappointed a conservator of her person and estate pursuant to the Lanterman-Petris-Short Act (LPS), prohibited K.M. from exercising specified rights and privileges, and granted additional powers to the conservator.  (Welf. & Inst. Code, § 5000 et seq.)[1]

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

K.M. contends (1) there is insufficient evidence to support the trial court finding that she cannot eat, dress or take shelter; and (2) there is insufficient evidence to support the trial court order (A) denying her certain rights and privileges, and (B) granting additional powers to the conservator.

We conclude substantial evidence supports the trial court's finding that K.M. was still gravely disabled and unable to provide for her food, clothing, and shelter because of a mental disorder. In addition, substantial evidence supports the trial court's order granting special powers to the conservator. Regarding the trial court's order denying K.M. certain rights and privileges (described in the authorizing statute as "special disabilities"), we conclude substantial evidence supports the order except for the denial of K.M.'s right to vote. We will modify the order to strike the portion of the order denying K.M. the right to vote and affirm the order as modified.

BACKGROUND

At a hearing on the petition for reappointment of a conservator, Dr. Olga Ignatowicz, a doctor at Placer County Mental Health, testified as an expert in the diagnosis and treatment of mental disorders. She was familiar with K.M. from personal evaluation, a review of K.M.'s medical records, and a review of declarations by Carolyn Mohr, M.D. and Eduardo Morales, M.D. supporting the petition.

Dr. Ignatowicz agreed with the diagnoses by prior physicians who worked with K.M. Dr. Ignatowicz said K.M. had been diagnosed with schizoaffective disorder, bipolar type, and dementia with behavioral disturbances. In addition to her mental disorder, K.M. had a pacemaker and 15 other diagnoses, and had been prescribed 21 medications.

Regarding K.M.'s current mental status, Dr. Ignatowicz testified that K.M. "remains in partial remission; however, she continues to display some cognitive deficits and residual psychosis." Dr. Ignatowicz concluded that K.M. was unable to provide for

2

her food, shelter, and clothing, and further opined that despite K.M.'s assertions, it was questionable whether K.M. would voluntarily accept treatment for her mental disorder.

K.M. told Dr. Ignatowicz the following: she would like to rent an apartment in Roseville or Auburn; the conservator and the county owed her money because they had been stealing from her paychecks; K.M. would like to work with a school in a food department, or as a cashier; she only suffers from diabetes; and she does not have a pacemaker. According to Dr. Ignatowicz, K.M. told Dr. Morales that she had written a book and had "lots of money coming in."

Dr. Ignatowicz reported that K.M. minimized her mental health condition. K.M. denied the diagnoses of dementia and schizophrenia, claiming she only suffered from a slight case of bipolar disorder. Based on this minimization of her mental illness and her medical history, Dr. Ignatowicz concluded it was questionable whether K.M. would voluntarily continue to take her psychotropic medications.

K.M. testified at the contested hearing. She said she did not receive money from the conservator's office, claiming they have not given K.M. her check in quite a few years, and they "deny" when she asks for new clothing or shoes. She testified her income would come from social security. She was unsure about the amount of her check, but believed it was over $800 per month. She said she won the lottery but did not receive the money. She also said she had $500,000 in the bank but one of the conservators took all the money from her account.

K.M. explained that if released from conservatorship, she planned on living in a one-bedroom apartment in Roseville. She anticipated her rent would be approximately $600 to $625 per month. She had plenty of clothes that people gave her, and if she needed more she could buy them with the money from her social security check. She said she could budget her money, paying rent, utilities, telephone and groceries, and then with any leftover funds buy clothing. She stated she would spend about $20 per month on clothing. She would go to the grocery store every two weeks to purchase food from

3

her social security income.  She anticipated it would cost her approximately $100 per month for food.

K.M. gave the trial court a list of her medications.  She again denied having a pacemaker, indicating that she had a "DM fibulizer."  If she were living on her own, she could get her medications from the county health facility or get a referral to a doctor and let that doctor determine what she needed.  She would go to the county mental health facility or the emergency room for medical treatment.

K.M. stated her mental health diagnosis was bipolar disorder; she insisted she did not have schizophrenia.  She also denied being on any psychiatric medication.  K.M. testified she would take her medication for her bipolar disorder and diabetes.  K.M. told the trial court she starred in the movie "The Postman Always Rings Twice."

The trial court granted the petition for reappointment, finding that K.M. "has a charming soft-spoken way of expressing herself" and "appears to be a delight, but extremely delusional."  The trial court found that reappointment of petitioner as conservator was necessary and in the best interest of the K.M., and that K.M. was still gravely disabled and unable to provide for her food, clothing, and shelter because of a mental disorder.  Pursuant to section 5357, the trial court ordered that K.M. is prohibited from exercising the following:  (1) the privilege to possess a driver's license; (2) the right to contract; (3) the right to refuse consent to treatment regarding her grave disability; (4) the right to vote; (5) the right to refuse consent to routine medical treatment unrelated to her grave disability; and (6) the right to possess a firearm.  In addition, pursuant to section 2591, the trial court granted the conservator additional powers, such as the power to contract, operate a business, purchase or sell real or personal property, lend money, exercise stock options, and employ attorneys.

I

K.M. contends there is insufficient evidence to support the required finding that she cannot eat, dress or take shelter.

4

In proceedings under the LPS, the public guardian must prove beyond a reasonable doubt that the proposed conservatee is presently gravely disabled. (§ 5350; *Conservatorship of Roulet* (1979) 23 Cal.3d 219, 235; *Conservatorship of Jones* (1989) 208 Cal.App.3d 292, 302-303.) As relevant in this case, to establish "grave disability" the evidence must support a finding that due to mental disorder, the person "is incapacitated or rendered unable to carry out the transactions necessary for survival or otherwise provide for his or her basic needs of food, clothing, or shelter." (*Conservatorship of Carol K*. (2010) 188 Cal.App.4th 123, 134 (*Carol K*.); § 5008, subd. (h)(1)(A).) "We review the record as a whole in the light most favorable to the trial court judgment to determine whether it discloses substantial evidence. Substantial evidence, which is evidence that is reasonable, credible, and of solid value, also includes circumstantial evidence. [Citation.]" (*Carol K., supra,* 188 Cal.App.4th at p. 134; *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577.) "The testimony of one witness may be sufficient to support such a finding." (*Carol K., supra,* 188 Cal.App.4th at p. 134.) The question of grave disability cannot be considered in a vacuum but rather "in the context of suitable alternatives, upon a consideration of the willingness and capability of the proposed conservatee to voluntarily accept treatment and upon consideration of whether the nondangerous individual is capable of surviving safely in freedom by himself or with the help of willing and responsible family members, friends or other third parties. [Citation.]" (*Conservatorship of Davis* (1981) 124 Cal.App.3d 313, 325.)

Dr. Ignatowicz reviewed K.M.'s medical records and the declarations of Drs. Mohr and Morales. She also evaluated K.M. herself. Dr. Ignatowicz noted it was unlikely K.M. would voluntarily accept treatment for her mental disorder, a conclusion supported by K.M.'s own testimony denying that she had schizophrenia and was taking psychiatric medications. Dr. Ignatowicz said K.M. suffers from delusions regarding the state of her finances, including that she had written a book, had "lots of money coming

5

in," had won the lottery, and had $500,000 in the bank before a conservator stole it. K.M. was uncertain of her income from social security, but believed it was over $800 a month. K.M. testified she would get an apartment that would cost almost 75 percent of that income. K.M. also demonstrated confusion about her other health conditions. Because K.M. has diabetes, she needs an understanding of her dietary restrictions and the requirements for managing the condition. Her statement that her diet would include "starches and fruits as well as vegetables" did not demonstrate the required understanding. In Dr. Ignatowicz's expert opinion, K.M. was unable to provide for her food, shelter, and clothing. Substantial evidence supports the trial court's finding that K.M. was still gravely disabled and unable to provide for her food, clothing, and shelter because of a mental disorder.

## II

K.M. also contends there is insufficient evidence to support the trial court order (A) denying her certain rights and privileges, and (B) granting additional powers to the conservator. We address each argument in turn.

## A

We begin with the contention that there is insufficient evidence to support the trial court's order denying K.M. certain rights and privileges. A finding of grave disability is not sufficient, by itself, to justify the imposition of the special disabilities enumerated in section 5357. (§ 5005; *Riese v. St. Mary's Hospital & Medical Center* (1987) 209 Cal.App.3d 1303, 1312-1313 (*Riese*).) The conservatee retains the rights and privileges covered by the special disabilities unless the trial court, after making separate findings of incapacity to support the imposition of the special disabilities, imposes those disabilities and confers corresponding authority on the conservator. (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165 (*George H.*); *Riese, supra,* at p. 1313.) Because the special disabilities deprive the conservatee of substantial constitutional rights, due process must be afforded before the rights are compromised. (§§ 5357, 5358;

6

*Conservatorship of Christopher A.* (2006) 139 Cal.App.4th 604, 612.) "The party seeking conservatorship has the burden of producing evidence to support the disabilities sought, the placement, and the powers of the conservator, and the conservatee may produce evidence in rebuttal. [Citation.]" (*George H., supra,* at p. 165.) In other words, there must be evidence in the record to support each of the specific disabilities imposed. (*Id.* at pp. 165-166.)

Here, there was no evidence admitted or presented on the specific issue of special disabilities. Contrary to county counsel's assertion, the declarations of Drs. Mohr and Morales were not admitted into evidence. (See *Conservatorship of Manton* (1985) 39 Cal.3d 645, 651.) Nonetheless, K.M.'s testimony provides a basis for the imposition of all the special disabilities except the denial of the right to vote.

The right to possess a firearm.

To support a limitation on a conservatee's ability to possess a firearm or deadly weapon, the trial court must find "that possession of a firearm or any other deadly weapon by the person would present a danger to the safety of the person or to others." (§ 8103, subd. (e)(1).) Here, there is evidence K.M. suffers from delusions, behavioral disturbances, dementia, and continues to display some cognitive deficits and residual psychosis. This was substantial evidence from which the trial court could conclude K.M. could not safely possess a firearm.

The privilege of possessing a driver's license.

Similarly, the overriding concern in the issuance of a driver's license is generally whether the person is able to operate a motor vehicle safely. (Veh. Code, §§ 12800, subd. (g), 12805, subd. (c), 12806, subd. (c); *People v. Superior Court (Wilson)* (1993) 18 Cal.App.4th 31, 36-37.) Mental disorders may affect a person's "ability to exercise reasonable and ordinary control in operating a motor vehicle" and may be the basis for refusing that person a driver's license. (Veh. Code, §§ 12800, subd. (g), 12806, subd. (c).) As with the right to possess a firearm, K.M.'s delusions and confusion put her

7

and others at risk if she were permitted to operate a vehicle.  This was substantial evidence supporting the conclusion that K.M. could not operate a motor vehicle safely.

The right to contract.

Under Civil Code section 1556, persons of "unsound mind" are not capable of entering into contracts.  Such incapacity has been categorized as follows:  (1) entirely without understanding (Civ. Code, § 38); (2) unsound but not entirely without understanding; and (3) susceptible to undue influence (Civ. Code, § 39; *Smalley v. Baker* (1968) 262 Cal.App.2d 824, 834-835, disapproved on another point in *Weiner v. Fleishman* (1991) 54 Cal.3d 476, 485-486).

K.M.'s delusions as to the sources of her income, her claims of lottery winnings, and substantial earnings from a book were evidence that she is without understanding about her financial situation and is susceptible to undue influence.  This is substantial evidence supporting the denial of her right to contract.

The right to refuse or consent to treatment.

In *Riese*, *supra*, 209 Cal.App.3d 1303, the California Supreme Court identified the following factors to consider in determining whether a gravely disabled person is incapable of making treatment decisions:  "(a) whether the patient is aware of his or her situation (e.g., if the court is satisfied of the existence of psychosis, does the individual acknowledge that condition); (b) whether the patient is able to understand the benefits and the risks of, as well as the alternatives to, the proposed intervention . . . ; and (c) whether the patient is able to understand and to knowingly and intelligently evaluate the information required to be given patients whose informed consent is sought (§ 5326.2) and otherwise participate in the treatment decision by means of rational thought processes." (*Riese, supra*, 209 Cal.App.3d at pp. 1322-1323.)

In light of those factors, the record supports a conclusion that K.M. was incompetent to refuse or consent to treatment regarding her grave disability, or to refuse

8

or consent to routine medical treatment unrelated to her grave disability.[2]  K.M. consistently denied she had schizophrenia, claiming she only had a bipolar disorder.  She denied she was on psychotropic medication.  She also denied she had a pacemaker.  K.M. had 15 different diagnoses requiring 21 different prescription medications, yet she stated her only physical ailment is diabetes.  The evidence supports a conclusion that K.M. was incompetent to make medical decisions, demonstrating a lack of awareness or acknowledgment of her various conditions, an inability to understand proposed interventions, and an inability to understand and evaluate the information given to her and participate in treatment decisions with a rational thought process.

The right to vote.

As relevant here, the Elections Code provides that a person shall be disqualified from voting if a conservator of the person and estate is appointed and the person is "not capable of completing an affidavit of voter registration in accordance with Elections Code section 2150."  (Elec. Code, § 2208, subd. (a)(2).)  In essence, Elections Code section 2150 requires that the affidavit show the affiant's name, place of residence, mailing address, date of birth and driver's license or social security number, state or country of birth, occupation, political affiliation and prior voter registration.  The affidavit must also show whether the affiant is currently imprisoned or on parole for a felony conviction.

As with the other special disabilities, there was no evidence specifically addressing K.M.'s ability to complete a voter registration affidavit.  However, unlike the other special disabilities, there is insufficient evidence in the record to support a conclusion that K.M. could not complete the affidavit.  K.M. correctly identified where she resided, and she was not asked other questions relevant to her ability to complete a

---

[2]  Although these are distinct disabilities to be imposed and considered separately by the trial court, we address them together in light of the record in this case.

9

voter registration affidavit. We will not speculate about her ability to complete the registration form. On this record we cannot uphold the denial of the right to vote.

B

We next turn to K.M.'s contention that there is insufficient evidence to support the trial court's order granting the conservator additional powers. "The purpose of a conservatorship is to provide a legally competent person to act, under the court's guidance, as the conservatee's agent in the management of estate property. [Citations.] A conservator has control of the estate, which is held in trust for the benefit of the conservatee. [Citations.] A conservator, under the court's scrutiny, has the power to make decisions on behalf of the conservatee. This includes exercising legal rights a conservatee had as a trustor. [Citations.]" (*Brown v. Labow* (2007) 157 Cal.App.4th 795, 814-815.) The trial court may grant a conservator of the estate the additional powers specified in Probate Code sections 2400 et seq., and 2591, "if the court determines that, under the circumstances of the particular guardianship or conservatorship, it would be to the advantage, benefit, and best interest of the estate to do so." (Prob. Code, § 2590, subd. (a); § 5357.) There is no requirement that the trial court provide a specific on-the-record statement of the reasons for each power. (*George H., supra*, 169 Cal.App.4th at p. 165.)

Here, the trial court granted the conservator the additional powers specified in Probate Code section 2591, as well as the power to contract for the conservatorship and employ and pay attorneys, accountants, investment counsel, agents, depositories, and employees. Substantial evidence supports the order granting the additional powers, including the evidence of K.M.'s delusions, particularly those regarding her finances, and her limited insight into her mental and physical health.

DISPOSITION

The order filed on June 25, 2014, is modified to strike the portion of the order denying K.M. the right to vote. The order is affirmed as modified. The trial court is

10

directed to notify the county registrar of voters that K.M.'s right to vote has been restored.

                                                         MAURO     , Acting P. J.


We concur:


     DUARTE     , J.


     HOCH     , J.

11